1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   JORGE MONTERRUBIO, individually          No.  2:11-cv-03270-MCE-AC
     and on behalf of others similarly
12   situated,

13                   Plaintiff,               **MEMORANDUM AND ORDER**

14         v.

15   BEST BUY STORES, L.P., a Virginia
     Limited Partnership, and DOES 1
16   through 100,

17                   Defendants.

18

19         Through this action, Plaintiff Jorge Monterrubio ("Plaintiff") alleges that Defendant

20   Best Buy Stores, L.P. ("Defendant"), failed to reimburse Best Buy supervisors and

21   managers for the use of their personal vehicles for business.  In particular, Plaintiff

22   alleges violations of California Labor Code section 2802 and California Business and

23   Professions Code section 17200 on behalf of himself and a putative statewide class.

24   Plaintiff filed his original Class Action Complaint in the Superior Court of California,

25   Solano County.  Defendant removed the case to federal court pursuant to the Class

26   Action Fairness Act.  The parties then conducted formal and informal discovery in

27   preparation for private mediation.  On October 22, 2012, the parties attended mediation.

28   ///

                                              1

1    At the mediation, the parties reached a settlement agreement ("Settlement Agreement"

2    or "Settlement"), which was fully executed on December 21, 2012.  Presently before the

3    Court is Plaintiff's motion for preliminary approval of the Settlement Agreement.[1]  (ECF

4    No. 21.)  Defendant has filed a notice of non-opposition.  (ECF No. 26.)  On April 3,

5    3013, the Court ordered supplemental briefing on the issue of attorneys' fees.  (ECF

6    No. 29.)  On April 12, 2013, Plaintiff filed a supplement in response to the Court's order.

7    (Pl.'s Resp., ECF No. 30; Ackermann Decl., ECF No. 31.)

8

9                    **FACTUAL AND PROCEDURAL BACKGROUND**[2]

10

11          Plaintiff resides in Middletown, California.  Plaintiff worked for Defendant from

12   September 2, 2001, to July 23, 2011.  Plaintiff worked as a Geek Squad Supervisor at

13   Defendant's Vacaville, California, store from October 7, 2007, through February 23,

14   2008.  From February 24, 2008, through December 13, 2008, Plaintiff was a Best Buy

15   Mobile Manager.  From December 14, 2008, through May 2, 2009, Plaintiff was a

16   Computer Supervisor, and from May 3, 2009, through July 23, 2011, Plaintiff was a

17   Portable Electronics Supervisor.

18          Plaintiff alleges that he and putative class members were required to use their

19   personal vehicles to transfer Defendant's supplies from one Best Buy location to

20   another.  According to Plaintiff, he and putative class members were required to use

21   their personal vehicles to perform inter-store inventory transfers at least once to twice

22   per week and to travel to local businesses to procure necessary office supplies for

23   Defendant's use.

24   ///

25   _____

26         [1] Because oral argument will not be of material assistance, the Court orders this matter submitted
     on the briefs.  E.D. Cal. Local R. 230(g).

27         [2] The following background is taken, sometimes verbatim, from Plaintiff's Motion for Preliminary
28   Approval (ECF No. 21) and Plaintiff's Complaint, which was included in Defendant's Notice of Removal
     (ECF No. 1).

1   Defendant failed to reimburse Plaintiff and the putative class members for both unpaid

2   fuel costs and for wear and tear on their vehicles, as well as all other fixed or variable

3   costs associated with operating their vehicles for business purposes.  Defendant failed

4   to reimburse Plaintiff and the putative class members even though Defendant had notice

5   that they were incurring these expenses.

6          Plaintiff originally filed his Original Class Action Complaint in the Superior Court of

7   California, Solano County, on behalf of himself and others similarly situated.  On

8   December 8, 2011, Defendant filed its notice of removal to federal court, asserting

9   jurisdiction under the Class Action Fairness Act.  Thereafter, Plaintiff and Defendant

10  served their initial disclosures.  On May 23, 2012, Defendant took Plaintiff's deposition.

11  Following Plaintiff's deposition, the parties agreed to engage in an informal discovery

12  process.  Between June and August 2012, Class Counsel interviewed and obtained

13  sworn declarations from seven Class Members who worked at Defendant's stores in

14  Vacaville, Sacramento, Citrus Heights and Fairfield, California.  The declarations of

15  these Class Members reveal that their experiences closely match Plaintiff's experiences

16  at Defendant's Vacaville and Fairfield stores.  Defendant provided to Plaintiff its policies

17  regarding reimbursing employees for business expenses, including Defendant's written

18  policy to exclude normal commuting miles from calculating reimbursable mileage for

19  business travel in personal vehicles.  Defendant also provided actual data of all of its

20  inter-store transfers in California, which included, among other things, hand carries

21  between all California stores from July 2010 through April 2012.  The data revealed that

22  there were approximately 6,623 hand-carry transfers performed by Class Members

23  during the referenced time period.  Defendant also prepared a maximum exposure

24  analysis, which showed that Defendant's maximum exposure as of August 2012,

25  excluding interest, attorney's fees, and potential PAGA penalties, amounted to

26  approximately $695,000.  However, Defendant strongly denies the wrongdoings alleged

27  by Plaintiff.  (ECF No. 21 at 7.)  Plaintiff's created their own damages model which

28  estimates Defendant's total maximum exposure at $1.3 million.

1   On October 22, 2012, the parties attended an all-day mediation at the offices of

2   Jeffrey A. Ross, Esq., in Oakland, California.  Attorneys Craig Ackermann and Michael

3   Malk ("Class Counsel"), settlement consultant Barry Goldstein and Plaintiff attended on

4   behalf of Plaintiff and the proposed class.  Attorneys Rebecca Epstein and Stephen

5   Taeusch, along with a corporate representative of Defendant, attended on behalf of

6   Defendant.

7   The parties agreed to settle for $400,000 with a claims process and no reversion

8   to Defendant of any settlement monies, including those settlement monies that go

9   unclaimed.  Plaintiff will discharge Defendant of all claims asserted in this action.

10  Plaintiff's Incentive Award of up to $7,500, attorneys' fees of up to $133,333.33,

11  Plaintiff's Counsel's actual costs of up to $15,000, and the Claims Administration Costs

12  of up to $25,000 will be subtracted from the $400,000.  Thus, the Net Settlement Amount

13  is the remainder, approximately $234,166.67, which will be available for distribution to

14  Class Members who file timely and valid claims on a per work week basis.  The

15  proposed Settlement Class is defined as "all persons who are, have been, or will be

16  employed by Best Buy Stores, L.P. in the state of California from October 31, 2007,

17  through the date of preliminary approval in a Covered Position."  (ECF No. 21 at 7 n.1.)

18  A Covered Position is defined as "the California Best Buy or Best Buy Mobile retail store

19  positions of Supervisor or Manager."  (Id.)  The average estimated payment per class

20  member is $65.79 (the "Estimated Payment").  The unclaimed funds from the $400,000

21  settlement amount, if any, will be reallocated to the Qualified Claimants.[3]  However, in no

22  event will a Qualified Claimant's actual settlement payment be more than five times

23  greater than the Estimated Payment.  The estimated payment for a Class Member is

24  proportionate to the Class Member's duration of employment in a Covered Position

25  during the Class Period.

26

---

27  [3] A "Qualified Claimant" is defined as a "Class Member who has timely submitted a completed
    Claim Form to the Claims Administrator, signed under penalty of perjury, and who has not timely submitted
    a valid Request for Exclusion from the Settlement to the Claims Administrator."  (Joint Stip. of Settlement

28  & Release, ECF No. 23-1 at 6.)

4

1  Any amount in excess of five times the estimated payment will be donated to the

2  Volunteer Legal Services Program of the Bar Association of San Francisco and

3  submitted to the Court for approval.

4

5                              **STANDARD**

6

7          A court may certify a class if a plaintiff demonstrates that all of the prerequisites of

8  Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the

9  requirements of Rule 23(b) have been met.  Fed. R. Civ. P. 23; see also Valentino v.

10 Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  Before certifying a class, the

11 trial court must conduct a "rigorous analysis" to determine whether the party seeking

12 certification has met the prerequisites of Rule 23.  Id. at 1233.  Where the parties have

13 entered into a settlement agreement before class certification, district courts "must pay

14 'undiluted, even heightened, attention' to class certification requirements . . . ."  Hanlon

15 v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Amchem Prods., Inc. v.

16 Windsor, 521 U.S. 591, 620 (1997)).  While the trial court has broad discretion to certify

17 a class, its discretion must be exercised within the framework of Rule 23.  Zinser v.

18 Accufix Research Inst., Inc., 235 F.3d 1180, 1186 (9th Cir. 2001), amended, 273 F.3d

19 1266 (9th Cir. 2001).

20         Rule 23(a) states in relevant part that "[o]ne or more members of a class may sue

21 or be sued as representative parties on behalf of all."  As a threshold matter, Rule 23(a)

22 requires that to certify a class, the court must be satisfied that:

23             (1) the class is so numerous that joinder of all members is
              impracticable (the "numerosity" requirement); (2) there are
24            question of law or fact common to the class (the
              "commonality" requirement); (3) the claims or defenses of
25            representative parties are typical of the claims or defenses of
              the class (the "typicality" requirement); and (4) the
26            representative parties will fairly and adequately protect the
              interests of the class (the "adequacy of representation"
27            requirement).

28 ///

                                        5

1  Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011) (quoting

2  In re Itel Secs. Litig., 89 F.R.D. 104, 112 (N.D. Cal. 1981)); see also Hanlon, 150 F.3d at

3  1019 (listing four requirements).

4       Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a

5  risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief

6  benefitting the class as a whole would be appropriate; or (3) that common questions of

7  law or fact predominate and the class action is superior to other available methods of

8  adjudication.  Fed. R. Civ. P. 23(b).  For purposes of preliminary approval of class

9  certification and proposed settlement, a district court must evaluate the terms of the

10  settlement to determine whether they are within a range of possible judicial approval.

11  See Newburg on Class Actions (4th ed. 2002) § 11:25.

12       The Court will have the opportunity to review evidence that bears on the Rule 23

13  requirements for class certification and settlement approval at the Final Fairness

14  Hearing.  Accordingly, at the Final Fairness Hearing, the Court may reconsider the

15  findings on a motion for preliminary approval of a class action settlement, should

16  additional information come to light that bears on whether the proposed settlement

17  satisfies the Rule 23 requirements.

18

19                                           **ANALYSIS**

20

21       **A.      Requirements of Rule 23(a)**

22

23       The Court's first task is to determine whether the proposed class meets the

24  requirements of Rule 23(a).  As set forth above, Rule 23(a) first requires numerosity.  "A

25  proposed class must be so numerous that joinder of all members is impracticable."

26  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the

27  specific facts of each case and imposes no absolute limitations."  Gen. Tel. Co. of the

28  Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980).

1    However, "it is unnecessary for the class representatives to either identify each particular

2    member of a class, or to state the exact number of persons in a class." Ikonen v. Harz

3    Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988).  The court may instead infer that

4    numerosity is satisfied based on the particular facts of the case.  Id.  Several factors can

5    influence a court's determination of whether the numerosity requirement is met.  First, "if

6    it is readily apparent that the size of the potential class would make joinder impossible,

7    then numerosity is met." Id. (citing In re Asbestos Sch. Litig., 104 F.R.D. 422, 428 (E.D.

8    Pa. 1984)); see also Lewis v. Starbucks Corp., 2:07-cv-00490-MCE-DAD (E.D. Cal.

9    Sept. 11, 2008) ("when the class is large, numbers alone are dispositive").  The court in

10   Riordan v. Smith Barney noted that the geographical disbursement of class members

11   outside of one district also increases the impracticability of joinder, and thus weighs in

12   favor of finding numerosity.  113 F.R.D. 60, 62 (N.D. Ill. 1986) (quoted in Lewis,

13   2:07-cv-00490-MCE-DAD (E.D. Cal. Sept. 11, 2008)).

14          In this case, there are approximately 3,559 members in the proposed class.  This

15   number clearly meets the numerosity requirement, as joinder of over three thousand

16   plaintiffs would be impossible.  See, e.g., Orvis v. Spokane Cnty., 281 F.R.D. 469, 473

17   (E.D. Wash. 2012) (finding class of 267 persons met numerosity requirement);

18   Protectmarriage.Com v. Bowen, 262 F.R.D. 504, 507 (E.D. Cal. 2009) (finding class of

19   466 putative plaintiffs satisfies numerosity requirement); Jordan v. L.A. Cnty., 669 F.2d

20   1311, 1319 (9th Cir. 1982) (numerosity satisfied for classes with thirty-nine, sixty-four,

21   and seventy-one people), vacated on other grounds, 459 U.S. 810 (1982).  Furthermore,

22   the putative class members are located in all four districts of California, which weighs in

23   favor of finding numerosity.  See Riordan, 113 F.R.D. at 62.  Accordingly, the proposed

24   class meets the numerosity requirement.

25          The second requirement of Rule 23(a) is commonality.  Under Rule 23(a)(2),

26   commonality is established if "there are questions of law or fact common to the class."

27   ///

28   ///

7

1  Courts construe the commonality requirement permissively, and the requirement can be

2  satisfied upon a finding of "shared legal issues with divergent factual predicates."

3  Hanlon, 150 F.3d at 1019.

4       Plaintiff asserts that there are five legal and factual questions shared by the class.

5  These questions are: (1) whether Defendant violated California Labor Code section 2802

6  by failing to reimburse supervisors and managers for out-of-pocket business expenses

7  incurred through the use of their personal vehicles; (2) whether Defendant violated

8  section 17200 of the California Business & Professions Code by failure to reimburse

9  employees for these expenses; (3) whether Defendant's policy to exclude "normal

10 commuting miles" from reimbursable miles violated section 2802 of the Labor Code

11 when employees were asked to pick up and drop off products for other stores before or

12 after work; (4) whether Defendant's failure to reimburse mileage-related expenses in the

13 absence of a request for reimbursement is legal in the face of records showing "hand-

14 carry" transfers; and (5) the nature and extent of class-wide injury and measure of

15 damages.  (ECF No. 21 at 13.)  These factual and legal questions make clear that the

16 evidentiary and legal arguments necessary to prosecute the instant claims are nearly

17 identical as to all class members.  Thus, the class meets the commonality requirement.

18      Third, Rule 23(a) demands that "the claims or defenses of the representative

19 parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This

20 requirement is known as the typicality requirement.  Typicality does not require the

21 claims to be identical.  Hanlon, 150 F.3d at 1020.  Rather, the Ninth Circuit has found

22 typicality when the requisite claims "share a common issue of law or fact . . . and are

23 sufficiently parallel to insure a vigorous and full presentation of all claims for relief."  Cal.

24 Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990)

25 (internal citations and quotations omitted), amended, 937 F.2d 465 (9th Cir. 1991).

26      Plaintiff asserts that his claims are the same that could be brought by all class

27 members because Plaintiff worked as a typical supervisor and manager.  Thus, Plaintiff

28 was subject to the same policies and practices that gave rise to the claims of the class.

1   Additionally, all class members seek the same relief—reimbursement from Defendant for

2   their work-related mileage expenses—and all class members allege the same injury.

3   Accordingly, the typicality requirement is met.  Although claims attributable to each class

4   member may present minor factual differences, such as amounts to be reimbursed or

5   miles driven, the differences do not preclude a finding of typicality.

6        Fourth, Rule 23(a) requires that "the representative parties will fairly and

7   adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement

8   is known as the adequacy requirement.  "To satisfy constitutional due process concerns,

9   absent class members must be afforded adequate representation before entry of a

10  judgment which binds them."  Hanlon, 150 F.3d at 1020 (citing Hansberry v. Lee,

11  311 U.S. 32, 42-43 (1940)).  In Hanlon, the Ninth Circuit identified two issues for

12  determining the adequacy of representation: (1) whether the named plaintiffs and their

13  counsel have any conflicts of interest with other class members, and (2) whether the

14  named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the

15  class."  Id. (citing Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir.

16  1978)).

17       The Court is entirely satisfied that the putative class is adequately represented by

18  both the named Plaintiff (the Class Representative) and Class Counsel.  The Class

19  Representative's interests are aligned with those of the class—that is, both the Class

20  Representative and the class are primarily interested in maximizing their recovery.

21  Plaintiff's claims and the claims of Class Members are coextensive.  Furthermore,

22  neither Plaintiff nor Class Counsel has conflicts with the Class Members.  (Ackermann

23  Decl., ECF No. 23 at 3; Malk Decl., ECF No. 24 at 2; Monterrubio Decl., ECF No. 25 at

24  9.)  Plaintiff has been involved in the case throughout the litigation and understands the

25  claims and theories asserted.  (ECF No. 25 at 4-8.)  Finally, Class Counsel has

26  experience litigating class actions, and Class Counsel has been certified in other cases

27  as adequate class counsel.  (See ECF Nos. 23, 24.)

28  ///

1    Thus, it is reasonable to find that Class Counsel and Plaintiff have "prosecute[d] the

2    action vigorously on behalf of the class."  Hanlon, 150 F.3d at 1020.  The putative class

3    therefore satisfies the Rule 23(a)(4) requirement for adequacy of representation.

4          Accordingly, the Court finds that the putative class meets the four requirements of

5    Rule 23(a).

6

7          **B.     Requirements of Rule 23(b)**

8

9          As set forth above, Rule 23(b) requires a plaintiff to establish one of the following:

10   (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory

11   or injunctive relief benefitting the class as a whole would be appropriate; or (3) that

12   common questions of law or fact predominate and the class action is superior to other

13   available methods of adjudication.  Fed. R. Civ. P. 23(b).  Rule 23(b)(3) sets forth four

14   factors as "pertinent" to finding that the class action is superior.  These factors are: "(A)

15   the class members' interests in individually controlling the prosecution or defense of

16   separate actions; (B) the extent and nature of any litigation concerning the controversy

17   already begun by or against class members; (C) the desirability or undesirability of

18   concentrating the litigation of the claims in the particular forum; and (D) the likely

19   difficulties in managing a class action."  Fed. R. Civ. P. 23(b).

20

21          **1.     Common Questions of Law or Fact Predominate**

22

23          Under the Rule 23(b)(3) predominance analysis, the Court must determine

24   whether the proposed class is "sufficiently cohesive to warrant adjudication by

25   representation."  Hanlon, 150 F.3d at 1022 (citing Amchem Prods., Inc. v. Windsor,

26   521 U.S. 591, 623 (1997)).  The requirement is satisfied if a plaintiff establishes that a

27   "common nucleus of facts and potential legal remedies" dominates the litigation.  Id.

28   ///

1    Here, Plaintiff asserts, and Defendant does not oppose the assertion, that

2    common questions of law or fact predominate over individual issues.  (ECF No. 21 at

3    15-16.)  The "common nucleus of facts" in the present case derives from Defendant's

4    alleged practices that applied consistently and uniformly to class members throughout

5    the class period, which deprived Plaintiff and Class Members of reimbursement for

6    expenses related to using their personal vehicles for Defendant's business.  While the

7    factual underpinnings underlying each Class Member's potential claims may have minor

8    differences, these common issues prevail.  See Blackie v. Barrack, 524 F.2d 891, 905

9    (9th Cir. 1975).

10

11                    **2.      Class Action is the Superior Method of Resolving the Dispute**

12

13    A plaintiff must also establish that the proposed class action is the superior

14    method of resolving the dispute in comparison to available alternatives.  Fed. R. Civ. P.

15    23(b)(3).  "A class action is the superior method for managing litigation if no realistic

16    alternative exists."  Valentino, 97 F.3d at 1234-35.  The Ninth Circuit has recognized that

17    a class action is a plaintiff's only realistic method for recovery if there are multiple claims

18    against the same defendant for relatively small sums.  Local Joint Exec. Bd.

19    Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 344 F.3d 1152, 1163 (9th Cir.

20    2001).  Plaintiff asserts that a class action is the superior method of adjudicating these

21    claims, as it would be highly inefficient for 3,559 class members to file individual cases.

22    Certification also provides the class with a viable method of obtaining redress for the

23    small individual damages, averaging $65.79 recovered by each class member.

24    Several additional considerations weigh in favor of finding that a class action is

25    the superior method in this case.  Because common issues predominate, class

26    certification serves the judicial economy function of Rule 23 class actions.  Valentino,

27    97 F.3d at 1234.  Additionally, public policy supports using class actions to enforce

28    statutes that focus on the workplace.

1   Thus, the Court finds that a class action is the superior method for resolving the present

2   case.

3       The same conclusion is reached after consideration of the superiority factors set

4   forth by Rule 23(b)(3).  The first factor under Rule 23(b)(3) requires the Court to consider

5   "the class members' interests in individually controlling the prosecution or defense of

6   separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  Because it is likely that each individual

7   member could only pursue relatively small claims, "class members have no particular

8   interest in individually controlling the prosecution of separate actions."  Fed. R. Civ. P.

9   23(b)(3)(A); see also Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir.

10  2001) ("Where damages suffered by each putative class member are not large, this

11  factor weighs in favor of certifying a class action.").  When the individual claims of class

12  members are small, the class action "facilitates the spreading of the litigation costs

13  among the numerous injured parties" and encourages recovery for unlawful activity.  See

14  In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534 (3d Cir. 2004).  Additionally, in

15  the instant action, the class members have the option to "opt-out" of the proposed

16  settlement, thus allowing individuals the opportunity to control the litigation.  Warfarin,

17  391 F.3d at 534.

18      The second relevant factor under Rule 23(b)(3) is whether, and to what extent,

19  other class members have begun litigation concerning the controversy.  Fed. R. Civ. P.

20  23(b)(3)(B).  If a multiplicity of suits will continue through judicial proceedings despite the

21  class action, this factor counsels against certification.  Zinser, 253 F.3d at 1191 (citing

22  7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Prac. & Proc. § 1780

23  (2d ed. 1986)).  Here, there is no evidence other class members have begun litigation

24  concerning the present controversy, or that a multiplicity of suits will continue through

25  judicial proceedings.

26      The third relevant factor under Rule 23(b)(3) requires the Court to consider "the

27  desirability or undesirability of concentrating the litigation of the claims in a particular

28  forum."

1    When the parties have agreed on a proposed Settlement Agreement, "the desirability of

2    concentrating the litigation in one forum is obvious."  Elkins v. Equitable Life Ins. Co. of

3    Iowa, No. 96-296-CIV-T-MB, 1998 WL 133741, at *20 (M.D. Fla. Jan. 28, 1998).  Here,

4    the parties in this case have agreed on a proposed settlement agreement, and for the

5    purpose of approving a settlement, "this forum is as good [as] or better than any other."

6    Id.  Accordingly, to the extent that this factor is relevant in the context of a proposed

7    settlement, the Court finds that it is desirable to concentrate the litigation of the claims in

8    this particular forum.

9         Finally, under Rule 23(b)(3), the Court must consider "the likely difficulties in

10   managing a class action."  In the context of a settlement, however, considerations

11   regarding management of the class action are irrelevant because the proposal to the

12   court is to avoid trial through a settlement agreement.  See Amchem, 521 U.S. at 620.

13        In light of the above considerations, common questions of law or fact

14   predominate, and a class action is the superior method of resolving the dispute, as

15   established by consideration of the superiority factors.  The settlement class therefore

16   meets the requirements of Rule 23(b)(3).  The Court may, however, review this finding at

17   the Final Fairness Hearing.

18

19        **C.     Notice Requirements of Rule 23(c)(2)(B)**

20

21        Rule 23(e) provides that "the claims, issues, or defenses of a certified class may

22   be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed.

23   R. Civ. P. 23(e).  Rule 23(e) first provides that the Court must "direct notice in a

24   reasonable manner to all class members who would be bound by the proposal." Fed. R.

25   Civ. P. 23(e)(1).  Where a class is certified under Rule 23(b)(3), the notice must meet the

26   requirements of Rule 23(c)(2)(B).  "Adequate notice is critical to court approval of a class

27   settlement under Rule 23(e)."  Bond v. Ferguson Enterprises, Inc., No. 1:09-cv-01662,

28   2011 WL 284962, at *8 (quoting Hanlon, 150 F.3d at 1025).

1  Thus, both the content of the notice and the form of the notice must be adequate and

2  approved by the Court.

3

4                    **1.      Form of Notice**

5

6         Rule 23(c)(2)(B) requires that the notice must be the "best notice . . . practicable

7  under the circumstances" and must provide individual notice "to all members who can be

8  identified through reasonable effort."  However, actual notice is not required under Rule

9  23(c)(2)(B).  See Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994).

10        Notice by mail is sufficient to provide due process to known affected parties, so

11  long as the notice is "reasonably calculated . . . to apprise interested parties of the

12  pendency of the action and afford them an opportunity to present their objections."

13  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  In this case, the

14  parties propose notice by mail to Class Members' last known addresses.  The parties

15  have included the proposed class notice, which includes the terms of the settlement

16  agreement, provides an estimated settlement amount for each Class Member, as well as

17  specifics regarding the date, time, and place of the final approval hearing, and informs

18  the members that they may enter an appearance through counsel.  The notice also tells

19  members how to exercise their rights under the settlement and informs members that

20  they can opt out and the settlement will not be binding on them.  It also includes

21  information about Plaintiff's counsel's application for attorney's fees and costs, including

22  the amount sought.

23        The parties have selected Simpluris, Inc., an experienced claims administrator, to

24  serve as the settlement administrator.

25  ///

26  ///

27  ///

28  ///

Within thirty days of preliminary approval of the Settlement, Defendant will provide Simpluris, Inc. with the full name, last known home address, last known telephone number, the last four digits of the Social Security number, dates of employment as a Supervisor or Manager in California during the Class Period and the total weeks worked during the Class Period for each Class Member (the "Class List").  (ECF No. 21 at 24.) Simpluris, Inc. will mail the Class Notice and Claim Form to each of the Class Members. (Id.)  The Claim Form provides each Class Member's estimated payment, and includes the statement that "unclaimed settlement funds associated with Class Members who do not submit Claim Forms will be reallocated to Class Members who do submit timely and signed Claim Forms."  (Id.)  The notice also explains that the final amount may change depending on the Court's final approval order.  Class members then have sixty days from the notice mailing to submit a claim.  (Id.)  All Claim Forms submitted to Simpluris, Inc. by the deadline shall be deemed filed.

This system for providing notice is the best practicable means under the circumstances and is reasonably calculated to provide notice to potential class members.  See Bond, 2011 WL 284962, at *9 (approving Simpluris, Inc. as Settlement Administrator).  Accordingly, the Settlement Agreement satisfies the Rule 23(c)(2)(B) requirement that the Court direct the "best notice that is practicable under the circumstances . . . ."

### 2.     Content of Notice

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  Rodriguez v. W. Pub. Corp., 563 F.3d 948, 962 (9th Cir. 2009) (quoting Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).  Rule 23(c)(2)(B) contains specific requirements for the notice, namely, that the notice state in clear, concise, plain, and easily understood language:

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; [and] (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The notice, as proposed by the parties, sufficiently meets these requirements. (Notice of Settlement, ECF No. 23 at 2.)  The notice includes information about the nature of the litigation, the scope of the class involved, and claims against Defendant. The proposed notice also states that Class Members who wish to object to the settlement must object in writing, stating the basis for the objection, file the objection with the Court and serve the parties' counsel and be postmarked no later than thirty days after the mailing of the Settlement Documents.  The notice informs Class Members that should they fail to follow these objection procedures, they will be deemed to have waived any objections and shall be foreclosed from making an objection to the Settlement. Accordingly, the notice satisfies the requirements of Rule 23(c)(2)(B).

## D.    The Requirements of Rule 23(e)

Rule 23(e) also states that the Court may only approve a class action settlement "after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  A district court "may consider some or all of the following factors" when assessing whether a class action settlement agreement is "fair, reasonable, and adequate":

[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement."

16

1   Rodriguez, 563 F.3d at 963 (quoting Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003)),

2   overruled on other grounds, Dukes v. Wal–Mart Stores, Inc., 603 F.3d 571, 617 (2010);

3   Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).  The Ninth Circuit has made

4   clear that these factors are not an "exhaustive list of relevant considerations," and that

5   "the relative degree of importance to be attached to any particular factor will depend on

6   the unique circumstances of each case." Officers for Justice v. Civil Serv. Comm'n of

7   City of S.F., 688 F.2d 615, 625 (9th Cir. 1982).  Additionally, the Court must ensure that

8   "the agreement is not the product of fraud or overreaching by, or collusion between, the

9   negotiating parties." Id.  However, even in class action contexts, "the trial court is

10  entitled to rely upon the judgment of experienced counsel for the parties.  Indeed, the

11  trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own

12  judgment for that of counsel." Elkins, 1998 WL 133741 at *28.

13      In short, "[i]f the proposed settlement appears to be the product of serious,

14  informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

15  grant preferential treatment to class representatives or segments of the class, and falls

16  within the range of possible approval, then the court should direct that the notice be

17  given to the class members of a formal fairness hearing." In re Tableware Antitrust Litig.,

18  484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); see also Collins v. Cargill Meat Solutions

19  Corp., 274 F.R.D. 294, 301-02 (E.D. Cal. 2011).

20      Preliminary investigation into the instant case shows that the parties engaged in

21  relevant discovery, negotiated the settlement at arm's-length in front of an impartial

22  mediator, and obtained a compromise which should provide class members with

23  reasonable relief considering the likely damages incurred and the difficulties inherent in

24  establishing liability at trial.  While the parties did not fully complete discovery prior to

25  settlement negotiations, but rather engaged in a process of informal discovery, approval

26  of a class action settlement is proper as long as discovery allowed the parties to form a

27  clear view of the strengths and weaknesses of their cases. In re Immune Response

28  Secs. Litig., 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

This litigation is not remarkably complex, and thus it is reasonable to find that through informal discovery, the litigation has reached the stage at which the parties have a clear view of the strengths and weaknesses of their cases.  Plaintiff asserts that Class Counsel has conducted sufficient discovery to determine Plaintiff's probability of success on the merits, the possible range of recovery, and the likely expense and duration of litigation.  (See ECF No. 21 at 18-20.)  The investigation and discovery undertaken by both sides in this case sufficiently illuminated the strengths and weaknesses of both claims and defenses.  (See ECF No. 21 at 19-20.)

Furthermore, the Settlement Agreement provides for a settlement amount of $400,000 total, with a claims process and no reversion to Defendant of any settlement monies, including those monies that go unclaimed.  Unclaimed funds, if any, will be reallocated to the Qualified Claimants.  Qualified Claimants will receive approximately $65.79 on average, and the maximum amount that may be disbursed to any Claimant who worked the entirety of the Class Period will be approximately $329.  (ECF No. 23 at 15.)  The amount secured by the agreement is equivalent to approximately 57% of Defendant's maximum exposure analysis ($695,068.00) and 30% of Plaintiff's maximum damages analysis ($1.3 million).  (ECF No. 23 at 15 n.8.)  The settlement amount per class member is a reasonable compromise in light of Plaintiff's claims and Defendant's potential defenses.

Indeed, Plaintiff's attorney Craig Ackermann states that in concluding that the $400,000 settlement amount was reasonable, he took into account the fact that Defendant maintained a reimbursement policy, and the fact that there are substantial risks of non-certification of the class because supervisors and managers were allegedly responsible for advising employees about how to obtain reimbursement for business expenses.  (ECF No. 23 at 16.)  There were also disputes between Plaintiff and Defendant about whether the applicable standard for the section 2802 claim is "knew" or "should have known," which could affect Defendant's liability.

///

1   While Mr. Ackermann states that he is confident "that he can show Defendant had

2   constructive notice that Class Members were not reimbursed for business expenses,"

3   proving "actual knowledge" would be more challenging.  (ECF No. 23 at 16-17.)

4       Also weighing in favor of preliminary approval of the settlement is that Class

5   Counsel is experienced in this type of litigation.  See Hanlon, 150 F.3d at 1026.

6   Plaintiff's attorney Michael Malk has been appointed or recommended as class counsel

7   or co-counsel on sixteen different occasions.  (ECF No. 24 at 3-6.)  Mr. Malk has

8   submitted a declaration stating that he believes that the proposed settlement is fair to the

9   Class, reasonable and adequate.  (ECF No. 24 at 9.)  Mr. Malk states that the settlement

10  agreement "is in the best interests of the Settlement Class in light of all known facts and

11  circumstances, including the risk of significant delay, defenses asserted by Defendant,

12  uncertainties regarding class certification, the assertion that members of the Class may

13  have been reimbursed for business expenses on many occasions, and numerous other

14  potential appellate issues."  (ECF No. 24 at 9.)

15      Moreover, Defendant has denied liability on all causes of action, and has agreed

16  to class certification for settlement purposes only.  Should the proposed settlement be

17  dismissed, it is probable that protracted litigation over class certification, discovery and

18  the actual claims at issue would commence.  This consideration also weighs in favor of

19  finding that the Settlement is fair, adequate and reasonable.

20      Finally, as part of the Settlement, Class Members will be deemed to have "fully,

21  finally, and forever released Best Buy and its past, present, and/or future, direct, and/or

22  indirect, officers, directors, employees, agents, representatives, attorneys, insurers,

23  partners, investors, shareholders, administrators, parent companies, subsidiaries,

24  affiliates, divisions, predecessors, successors, and/or assigns from all Class Member

25  Released Claims through the date of approval."

26  ///

27  ///

28  ///

1   Class Member Released Claims are defined as "any and all claims against Best Buy . . .

2   arising from the allegations in the Complaint filed in the Action for claims under California

3   Labor Code sections 2802 and 2699, California [Business and Professions] Code 17200,

4   and all claims for related penalties, indemnity, or reimbursement of expenses."  (ECF

5   No. 23-1 at 3-4.)  These claims track Plaintiff's allegations in the action, and the

6   settlement does not release unrelated claims that class members may have against

7   Defendants.

8           It is impossible to predict the ultimate outcome of a class action trial and the

9   resulting impact on any class members.  However, at this preliminary stage, it is evident

10   that the Settlement is the product of arm's-length and informed negotiations, and

11   appears to treat all class members fairly.  The negotiations took place on October 22,

12   2012.  The agreement has no obvious deficiencies, does not improperly grant

13   preferential treatment to class representatives or segments of the class, and falls within

14   the range of reasonable settlements.  Plaintiff and Class Counsel obtained a

15   compromise which will provide class members with reasonable relief considering

16   Plaintiff's expected recovery balanced against Plaintiff's risk of proceeding to trial.

17   Finally, there appears to be no evidence of collusion or overreaching.  Accordingly, for

18   the purposes of preliminary approval, the Court is satisfied that the terms of the

19   proposed Settlement Agreement are fair, adequate, and reasonable and meet Rule

20   23(e)'s requirements.  The Court will further review this finding for fairness, and evidence

21   of overreaching and/or collusion, following appropriate notice to the class members and

22   a Final Fairness Hearing.

23           The parties ask that a final approval hearing be set for sixty days after the end of

24   the claims period.  Thus, the hearing would take place on or after October 31, 2013.

25   ///

26   ///

27   ///

28   ///

1

2

### E.     Attorneys' Fees

Where the payment of attorneys' fees is part of the negotiated settlement, the fee settlement must be evaluated for fairness in the context of the overall settlement. Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002).  Courts must ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount.  In re Bluetooth Headset Prods. Liability Litig., 654 F.3d 935, 941 (9th.Cir.2011).

Under Ninth Circuit law, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method."  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295-96 (9th Cir. 1994)).  Under the percentage-of-recovery method, the prevailing attorneys are awarded a percentage of the common fund recovered for the class.  Id.  In applying this method, courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record.  Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).  Under the lodestar method, the prevailing attorneys are awarded an amount calculated by multiplying the hours they reasonably expended on the litigation times their reasonable hourly rates.  Staton, 327 F.3d at 965.  This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  Bluetooth, 654 F.3d at 942.  Even if the court chooses to apply the percentage-of-recovery method, calculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award.  Vizcaino, 290 F.3d at 1050–51.

Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable.

1    <u>Powers v. Eichen</u>, 229 F.3d 1249, 1258 (9th Cir. 2000).  The Ninth Circuit has identified

2    a number of factors that may be relevant in determining if the award is reasonable:

3    (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of

4    work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and

5    (6) the awards made in similar cases.  <u>Vizcaino</u>, 290 F.3d at 1048–50.  Based on these

6    factors, the percentage amount can be adjusted upward or downward depending on the

7    circumstances of the case.  <u>Paul, Johnson, Alston & Hunt v. Graulty</u> ("Paul'), 886 F.2d

8    268, 271 (9th Cir. 1989).  Indeed, "in most common fund cases, the award exceeds th[e]

9    benchmark."  <u>In re Omnivision Techs., Inc.</u>, 559 F. Supp. 2d 1036, 1047 (N.D. Cal.

10    2008).  Percentage awards of between twenty and thirty percent are common.  <u>See</u> <u>In re</u>

11    <u>Activision Sec. Litig.</u>, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of

12    recent reported cases discloses that nearly all common fund awards range around 30%

13    even after thorough application of either the lodestar or twelve-factor method.");

14    <u>Vizcaino</u>, 290 F.3d at 1047 (9th Cir. 2002).  Nonetheless, an explanation is necessary

15    when the district court departs from the 25% recovery benchmark.  <u>Powers</u>, 229 F.3d at

16    1256–57.

17

18           **1.**     **Percentage-of-Recovery Considerations**

19

20        In the Joint Stipulation of Settlement and Release, the parties agree to

21    compensate Plaintiff $133,333.33 in attorneys' fees for serving as class counsel,

22    equaling 33.33% of the total settlement fund, subject to the approval of the Court.  (ECF

23    No. 23-1 at 10.)  Defendant has not objected to the fees sought.  Plaintiff provided

24    supplemental briefing on the issue of attorneys' fees, pursuant to the Court's April 3

25    Order.  (ECF Nos. 30, 31.)

26        <u>Results Achieved</u>

27        Class Counsel's efforts created a non-reversionary fund of $234,166.67 for the

28    Class.  (<u>Id.</u>; ECF No. 24 at 12.)

1   Plaintiff asserts that the recovery equals 30% of Plaintiff's calculation of Defendant's

2   maximum liability exposure, and 57% of Defendant's calculation of its maximum liability

3   exposure.  According to Plaintiff, this recovery is "exceptional."  (ECF No. 30 at 4.)

4   Plaintiff also states that because the settlement fund is much smaller than, for example,

5   the "mega-fund" in Vizcaino, a departure from the Ninth Circuit's 25% rule is warranted.

6   Because there was a risk involved, including the risk of no relief for the class, the Court

7   finds that Class Counsel have obtained a good result for the Class, and the Class was

8   well represented by Class Counsel.  However, the circumstances of the litigation simply

9   do not lead the Court to conclude that the result is "exceptional."

10      Risks of Litigation

11      Plaintiff also argues that there are significant risks of litigation for Plaintiff at this

12  point.  Plaintiff points to four factors creating such risk.  The first factor is the issue of

13  whether Best Buy's business expense reimbursement policy, including its written policy

14  to exclude normal commuting miles, violated Section 2802 of the Labor Code when

15  managers and supervisors were performing hand-carries on their way to their home

16  store and on their way home from their home store.  Second, Defendant contends that

17  Plaintiff may have interests adverse to the Class because Plaintiff was, according to

18  Defendant, responsible for explaining Defendant's reimbursement policies and

19  procedures to other employees and for implementing those policies.  Third, Defendant

20  contends that the applicable standard for violations of section 2802 is "knew or should

21  have known," while Plaintiff contends that it is a strict liability standard.  Finally,

22  Defendant contends that it has an "exhaustion defense"—that is, that Defendant cannot

23  be held liable because Plaintiff did not submit mileage reimbursement requests when

24  Plaintiff performed hand-carries.  Class Counsel asserts that they assumed these risks

25  of litigation in taking the case.  Class Counsel also state that defense counsel

26  adequately defended Defendant, and thus defense counsel's competence posed a

27  litigation risk to Plaintiff.  Finally, Class Counsel asserts that they incurred a financial risk

28  in the amount of their current lodestar, which they assert is currently $129,781.00.

1   While these factual circumstances make clear that Class Counsel assumed risks

2   in taking on this litigation, this case is not one that is "extremely risky." Cf. Viscaino,

3   290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost

4   twice in district court and there was absence of supporting precedent). Thus, this factor

5   does not justify departure from the 25% benchmark.

6   Skill and Quality of the Work

7   Plaintiff also argues that this case required "exceptional skill," and that "[v]ery few

8   firms have the expertise to effectively and efficiently carry out [the] tasks" of "intensive

9   use and extrapolation from Defendant's records" and "the many witness interviews."

10   (ECF No. 30 at 5-6.) While the informal discovery in this case involved review of

11   thousands of pages of documents, and Class Counsel are experienced in class action

12   wage and hour litigation, this case is, quite simply, a garden-variety wage and hour class

13   action. Class counsel reviewed relevant documents and interviewed and obtained

14   sworn declarations from seven Class Members. The circumstances of this litigation do

15   not support a finding that this case required "exceptional skill," and Class Counsel submit

16   only their own self-serving declarations in furtherance of their contention that "very few

17   firms" have the "expertise" to carry out litigation of this sort. While the Court does not

18   doubt that Class Counsel are skilled litigators in the wage and hour context, the Court

19   cannot find that the skill and quality of the work in this particular case warrant a

20   departure from the 25% benchmark.

21   Contingent Nature of the Fee

22   Class Counsel prosecuted the case on a contingency basis, which in itself

23   presented considerable risk. See Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D.

24   482, 492 (E.D. Cal. 2010). Courts have long recognized that the attorneys' contingent

25   risk is an important factor in determining the fee award and may justify awarding a

26   premium over an attorney's normal hourly rates. See In re Wash. Pub. Power Supply

27   Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994).

28   ///

1

Awards Made in Similar Cases

2        Plaintiff cites to several cases as examples of "similar cases" in which counsel for

3   the class received 33% of the common fund as attorneys' fees.  (ECF No. 18.)  However,

4   a closer examination of these cases reveals that they are not, in fact, similar to the

5   instant case.

6        In Vasquez v. Coast Valley Roofing, class counsel was awarded 33.33% of the

7   common fund.  266 F.R.D. 482.  The total amount awarded to counsel was $100,000,

8   and the total amount of the common fund was $300,000.  The lodestar in Vasquez was

9   $178,475, and thus the total amount awarded to class counsel represented roughly 56%

10  of the lodestar.  The average plaintiff in Vasquez recovered $2,600.  The attorneys in

11  Vasquez conducted significant discovery and took in-depth interviews of class members.

12  Furthermore, litigating the case required specialized skills to find and contact largely

13  Spanish-speaking workers, and plaintiff's burden of proof posed challenges due to the

14  defendant's limited record-keeping.  Additionally, one of the issues in Vasquez was an

15  issue pending before the California Supreme Court, and thus it was possible that the

16  California Supreme Court's decision would significantly lower the class's potential

17  recovery.

18        Plaintiff also cites to Willis v. Cal. Western Transport, 1:00-cv-05695 AWI LJO

19  (E.D. Cal. July 25, 2003).  In Willis, class counsel was also awarded 33% of the common

20  fund.  The common fund was $1 million, and class counsel received $333,333.33 as

21  attorneys' fees.  Class Members recovered significant amounts, with some recovering

22  $8,000 or $11,000.  The Court's order did not discuss the lodestar amount, nor did it

23  discuss any of the Ninth Circuit's factors for determining the appropriateness of the

24  attorneys' fees.  1:00-cv-05695 AWI LJO, ECF No. 222 at 2.  Furthermore, Willis was

25  one of ten related cases, litigated over the course of four years.  See generally Docket in

26  1:00-cv-05695 AWI LJO.

27  ///

28  ///

1    In Chavez v. Petrissans, class counsel also received 33% of the common fund as

2  attorneys' fees.  Case No. 1:08-cv-00122-LJO-GSA, ECF No. 89 (E.D. Cal. Dec. 15,

3  2009).  The common fund was $250,000, and class counsel received $83,333 as their

4  fees.  The average claimant's share was $3,750.  Notably, class counsel's lodestar was

5  $127,493, and thus class counsel's award of $83,333 amounted to roughly 65% of class

6  counsel's calculated lodestar.  Furthermore, in Chavez, the parties engaged in formal

7  discovery.  As with Vasquez, there was significant risk in the litigation in Chavez, as

8  issues in the case were pending before the California Supreme Court which could have

9  had a significant impact on the outcome of the litigation.

10    In Romero v. Producers Dairy Foods, Inc., class counsel again received 33% of

11  the common fund as attorneys' fees.  Case No. 1:05-cv-00484-DLB, ECF No. 150 (E.D.

12  Cal. Nov. 14, 2007).  The common fund was $240,000, and thus class counsel received

13  $80,000 in fees.  Counsel's lodestar, however, was $257,584.50—counsel therefore

14  recovered roughly 31% of their lodestar.  To justify the award of 33%, the Court found

15  that Counsel had been involved in case for over two years, spent many hours litigating

16  the issues, and performed extensive research and conducted discovery.  The case also

17  contained the complex legal issue of whether claims for overtime compensation were

18  barred based on Motor Carried Act exemption to Fair Labor Standard Act.

19    By contrast, in the present case the average claimant will receive $65.79, and the

20  most a claimant can receive is approximately $325.  The parties engaged in informal

21  discovery, and one deposition was taken.  Plaintiff's counsel interviewed seven other

22  Class Members.  Although Class Counsel contends that there were significant risks in

23  the litigation, there is no evidence that the parties are litigating cutting-edge legal issues,

24  or that there is a case pending before the California Supreme Court, or any other court,

25  which might drastically change the outcome of the case once decided.

26    While the instant record shows no evidence of bribery or collusion in reference to

27  the requested attorneys' fees, it is nonetheless lacks significant support for Class

28  Counsel's requested fee amount of 33.33% of the common fund.

1   Specifically, this action was litigated for slightly under a year—it was filed on October 31,

2   2011, in state court, and settled on October 24, 2012.  There has not been a single

3   hearing in the matter.  No motions, other than the instant unopposed Motion for

4   Preliminary Approval, were filed.  While the Court did issue a pretrial scheduling order

5   (ECF No. 13), the parties state that they engaged in "informal discovery."

6        In light of the factors discussed above,[4] the circumstances justifying a fee award

7   of 33% of the settlement fund are not readily apparent to the court.  Cf. Fischel v.

8   Equitable Life Assur. Soc'y of the U.S., 307 F.3d 997, 1007 (9th Cir. 2002) ("The fact that

9   the case was settled early in the litigation supports the district court's ruling [not to award

10  class counsel's 25% fee award request because] the 25% benchmark of the percentage-

11  of-the-fund approach might very well have been a 'windfall.'"); Santos v. Camacho,

12  No. 04-0006, 2008 WL 1699448, at *34 (D. Guam April 10, 2008) (holding that "the

13  minimal amount of discovery conducted" and the lack of "any pre-trial or trial

14  proceedings" made it "quite clear that the requested 10% of the common fund would be

15  unreasonable").  The present case is simply not a case such as Vizcaino, where class

16  counsel submitted evidence showing that they "achieved excellent results" in an

17  "extremely risky" matter, their "performance generated benefits beyond the cash

18  settlement fund," and their representation of the class "extended over eleven years,

19  entailed hundreds of thousands of dollars of expense, and required counsel to forgo

20  significant other work, resulting in a decline in the firm's annual income."  290 F.3d at

21  1050.  Such circumstances in Vizcaino warranted a 28% fee award to class counsel.

22  ///

23  ///

24  ///

25  ///

26  ///

27  _____

        [4] Plaintiff does not assert, and the Court does not find, that there were any significant burdens
    carried by Class Counsel.  Accordingly, this factor does not bear on the Court's consideration of the
28  appropriate percentage recovery for Class Counsel in this case.

1    By contrast, this Court previously awarded the Ninth Circuit's 25% benchmark amount as

2    attorneys' fees when a settlement agreement was reached "after lengthy investigation

3    and litigation, including 'in-person interviews with potential witnesses, extensive written

4    and oral discovery, and exhaustive analysis of documentary evidence,'" there were

5    "complex legal issues in the case increase[ing] the risk involved in proceeding to trial,"

6    and the settlement was reached "at an early stage in the litigation . . . ." Wright v. Linkus

7    Enters., Inc., 259 F.R.D. 468, 477, No. 2:07-cv-01347-MCE-CMK (E.D. Cal. 2009).

8

9                          **2.      Lodestar Cross-Check**

10

11         The lodestar cross-check requires the court to first determine whether the hourly

12   rates sought by counsel are reasonable.  "[T]he district court must determine a

13   reasonable hourly rate considering the experience, skill, and reputation of the attorney

14   requesting fees." Chalmers v. City of L.A., 796 F.2d 1205, 1210 (9th Cir. 1986). This

15   determination "is not made by reference to rates actually charged by the prevailing

16   party." Id.  Instead, the court should use the prevailing market rate in the community for

17   similar services of lawyers "of reasonably comparable skill, experience, and reputation."

18   Id. at 1210–11.  The "relevant legal community" in the lodestar calculation is generally

19   the forum in which the district court sits.  Accordingly, the rate to be applied in the

20   present case is the prevailing market rate for a wage and hour attorney practicing in the

21   Sacramento area.  The fee applicant bears the burden of demonstrating that "the

22   requested rates are in line with those prevailing in the community for similar services by

23   lawyers of reasonably comparable skill, experience and reputation." Camacho v.

24   Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted).  "Affidavits of

25   the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community,

26   and rate determinations in other cases, particularly those setting a rate for the plaintiff['s]

27   attorney, are satisfactory evidence of the prevailing market rate." United Steelworkers of

28   Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

1    In addition to considering affidavits and evidence submitted by the parties, the court may

2    also "rely on its own familiarity with the legal market." Ingram v. Oroudjian, 647 F.3d

3    925, 928 (9th Cir. 2011).

4         Here, Class Counsel provides a lodestar amount of $129,781.  (ECF No. 21 at

5    22.)  This amount is based on a total of 335.77 hours expended on the litigation.  Class

6    Counsel "anticipates performing an additional thirty hours of work through final approval,

7    which will likely bring [the] total lodestar to approximately $147,781."  (ECF No. 21 at 22

8    n.35.)  However, this lodestar rate is calculated at what Plaintiffs initially asserted were

9    Los Angeles rates, and now assert are applicable rates in the Eastern District as well.

10         Plaintiff asserts that Craig Ackermann of Ackermann & Tilajef, PC ("A&T"), is

11   entitled to $550 per hour.  Plaintiff also asserts that Michael Malk of the Malk Law Firm is

12   entitled to $500 per hour.  Additionally, Plaintiff asserts that Barry Goldstein, who served

13   as a consultant to Mr. Ackermann and Mr. Malk and served as lead negotiator for the

14   Class during the meditation, is entitled to an hourly rate of $785.  Next, Plaintiff asserts

15   that Jala Ansellem, who works on a contract basis for A&T and the Malk Law Firm, is

16   entitled to $600 per hour.  While Mr. Ackermann's declaration (ECF No. 23) states that

17   Ms. Tatiana Hernandez is a lawyer who has devoted 32.79 hours of work to this case,

18   Mr. Ackermann provides scant information about Ms. Hernandez's experience, stating

19   only that "prior to joining my firm, as an associate attorney, Ms. Hernandez worked for

20   various defense-side law firms in Los Angeles."  (ECF No. 23 at 23.)  Rosie Salinas is a

21   legal assistant who currently attends paralegal school on a part-time basis at UCLA.

22   (ECF No. 23 at 24.)  Mr. Ackermann states that "Ms. Salinas worked for a diverse

23   assortment of law firms for over two years before joining [A&T]," and asserts that

24   Ms. Salinas's billing rate is $150 per hour.  (ECF No. 23 at 24.)  Landen Buckley is a law

25   clerk employed by A&T, and is a third-year law student at Pepperdine University School

26   of Law.  (ECF No. 23 at 24.)  Mr. Buckley worked to prepare "an analysis of Best Buy's

27   potential damages exposure in preparation of the mediation."  (ECF No. 23 at 24.)

28   ///

1  According to Mr. Ackermann, Mr. Buckley's billing rate is $150 per hour.  (ECF No. 23 at

2  24.)

3      Mr. Malk's declaration states that Linda Seiger is a paralegal (ECF No. 24 at 11).

4  Ms. Seiger's hourly rate is $200 per hour.  (ECF No. 21 at 22 n.35.)  David Shapiro is a

5  law clerk (ECF No. 24 at 11) and his hourly rate is $150 per hour.  (ECF No. 21 at 22

6  n.35.)

7      Plaintiff submits no "[a]ffidavits of . . .  other attorneys regarding prevailing fees in

8  the community" to support the contention that rates range between $350 and $785 per

9  hour in the Eastern District of California.  Plaintiff does, however, point to several cases

10  in the Eastern District where Plaintiff's proposed rates have been adopted.  In Nelson v.

11  Dollar Tree, the court found that "the hourly billing rates of class counsel and their staff—

12  as set forth in the Motion for Attorney's Fees—are reasonable."  No. 2:11-CV-01334-

13  JAM-CMK, ECF No. 48 (E.D. Cal. April 25, 2012).  That case addresses only fee awards

14  for Mr. Ackermann, Ms. Hernandez, Ms. Salinas, Mr. Malk, Ms. Amsellem and

15  Ms. Seiger.  Id., ECF No. 39 at 17.  The fee award for Ms. Seiger in that case is $175

16  per hour, whereas in this case $200 per hour is requested for Ms. Seiger.  Plaintiff also

17  cites to Bond v. Ferguson as a case where A&T's rates were found reasonable.  (ECF

18  No. 30 at 9.)  In Bond, the court specifically noted that "the hourly rates presented by

19  counsel are higher than normally permitted under federal law," and "prevailing hourly

20  rates in the Eastern District of California are in the $400/hour range."  No. 1:09-cv-1662

21  OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011).  The Bond court

22  awarded fees to A&T based in part on comparison to the Laffey matrix.  Id.  However,

23  the Ninth Circuit has observed that "just because the Laffey matrix has been accepted in

24  the District of Columbia does not mean that it is a sound basis for determining rates

25  elsewhere, let alone in a legal market 3,000 miles away.  It is questionable whether the

26  matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river

27  from the nation's capital."  Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454

28  (9th Cir. 2010).

1    Furthermore, the Bond court adjusted rates downward to comport with the Laffey matrix,

2    but did not further adjust rates downward to reflect the differences in the cost of living

3    between the Eastern District of California and the District of Columbia.  See 2011 WL

4    2648879, at *12-13.

5         "Because the lodestar is being used here as a cross-check, the court may use a

6    'rough calculation of the lodestar.'"  Bond, 2011 WL 2648879, at *12.  Although the Court

7    must certainly take into account the "rate determinations in other cases, particularly

8    those setting a rate for the plaintiff['s] attorney" as "evidence of the prevailing market

9    rate," United Steelworkers of Am., 896 F.2d at 407, the rate determinations by other

10   district judges, within and outside of the Eastern District, are not binding on the Court.

11   The Court must also consider the prevailing market rate in the community for similar

12   services of lawyers "of reasonably comparable skill, experience, and reputation."

13   Chalmers, 796 F.2d at 1210–11.  This determination "is not made by reference to rates

14   actually charged by the prevailing party."  Id.  Thus, for example, the fact that

15   Ms. Amsellem's "billing rate is $600 per hour" does not require the Court to award

16   Ms. Amsellem a fee of $600 per hour.

17        As many cases in the Eastern District, including Bond, observe, "prevailing hourly

18   rates in the Eastern District of California are in the $400/hour range."  2011 WL

19   2648879, at *12; see also Franco v. Ruiz Food Products, Inc., 1:10-CV-02354-SKO,

20   2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012); Gong-Chun v. Aetna Inc., 1:09-CV-

21   01995-SKO, 2012 WL 2872788, at *21 (E.D. Cal. July 12, 2012); Garcia v. Gordon

22   Trucking, Inc., 1:10-CV-0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012).

23   Although other cases have found that Class Counsel are entitled to fees higher than the

24   prevailing hourly rates in the Eastern District of California, this Court finds that the work

25   and result in this case are not so exceptional as to warrant a departure from the

26   prevailing hourly rates in the $400/hour range.

27   ///

28   ///

31

1    Accordingly, Mr. Ackermann, Mr. Malk, Mr. Goldstein, and Ms. Ansellem may be

2    compensated at an hourly rate of $400 per hour.  Next, "[j]udges in this district have

3    repeatedly found that [a] reasonable rate[] in this district [is] . . . $150 for associates."

4    Yeager v. Bowlin, No. CIV. 2:08–102 WBS JFM, 2010 WL 2303273, at *6 (E.D. Cal.

5    June 7, 2010).  Because it is not entirely clear to the Court what Ms. Hernandez's

6    experience and position are, the Court assumes that she remains an associate of A&T,

7    as she was when she joined the firm.  Thus, the Court awards Ms. Hernandez a rate of

8    $150 per hour.  As to law clerks, rates of $100-$110 per hour are "in line with those rates

9    prevailing in the community."  Ferrando v. Comm'r, No. 2:08–cv–02470–GEB–CMK,

10   2013 WL 1087800, at *4 (E.D. Cal. Mar. 14, 2013).  A rate of $100 per hour is therefore

11   awarded to Mr. Buckley and Mr. Shapiro.  Finally, paralegals may be compensated at an

12   hourly rate between $75 and $100.  See, e.g., Passport Health, Inc. v. Travel Med, Inc.,

13   2:09-CV-01753-GEB, 2011 WL 6211874, at *2 (E.D. Cal. Dec. 14, 2011) (stating that

14   paralegal rates are generally $100 per hour or less in Sacramento and awarding an

15   hourly rate of $75 for paralegals); Murillo v. Pac. Gas & Elec. Co., No. CIV. 2:08–1974

16   WBS GGH, 2010 WL 2889728, at *10-11 (E.D. Cal. July 21, 2010) (finding rate of $95

17   per hour for paralegals and $300 for attorneys in wage and hour action appropriate).

18   The Court therefore awards a rate of $75 per hour to Ms. Salinas and $95 per hour to

19   Ms. Seiger.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Thus, the Court computes Class Counsel's lodestar as follows:

| Name | Hours | Claimed Hourly Rate | Awarded Hourly Rate | Awarded Lodestar |
|---|---|---|---|---|
| Craig J. Ackermann, Esq. | 92.3 | $550 | $400 | $36,920 |
| Tatiana Hernandez, Esq. | 32.79 | $350 | $150 | $4,918 |
| Jala Amsellem, Esq. | 31.4 | $600 | $400 | $12,560 |
| Rosie Salinas, Legal Assistant | 18.2 | $150 | $75 | $1,365 |
| Landen Buckley, Law Clerk | 28.7 | $150 | $100 | $2,870 |
| Michael Malk, Esq. | 26.08 | $500 | $400 | $10,432 |
| Linda Seiger, Paralegal | 75.67 | $200 | $95 | $7,188.65 |
| David Shapiro, Law Clerk | 16.62 | $150 | $100 | $1,662 |
| Barry Goldstein, Esq. | 14.01 | $785 | $400 | $5,604 |
| **TOTAL LODESTAR AWARD: $83,519.65** | | | | |

As just set forth, the Court finds that the appropriate lodestar in this case, based on the awarded hourly rates, is $83,519.65.  Plaintiff asserts that "Plaintiff's Counsel anticipates performing an additional [thirty] hours of work through final approval . . . ." (ECF No. 21 at 22 n.35.)  Assuming that counsel actually performs this additional work, rather than paralegals or law clerks, the lodestar will be increased by $12,000.[5]  Thus, the final lodestar would be $95,519.65.

///

///

///

---

[5] $400 multiplied by 30 hours.

33

1    After calculating the lodestar, the court must decide whether to enhance or reduce

2  the award in the light of particular factors, including the novelty and difficulty of the case,

3  the skill displayed in presenting them, the extent the litigation precluded other

4  employment by the attorneys, and the contingent nature of the fee award.  Ketchum v.

5  Moses, 24 Cal. 4th 1122, 1132 (2001).  However, "[t]here is no hard-and-fast rule limiting

6  the factors that may justify an exercise of judicial discretion to increase or decrease a

7  lodestar calculation."  Thayer v. Wells Fargo Bank, N.A., 92 Cal. App. 4th 819, 834

8  (2001).  Moreover, "[t]here is a strong presumption that the lodestar figure represents a

9  reasonable fee."  Goldkorn v. Cnty. of San Bernadino, EDCV 06-707-VAP OPX, 2012

10  WL 476279, at *10 (C.D. Cal. Feb. 13, 2012) (citing Jordan v. Multnomah Cnty.,

11  815 F.2d 1258, 1262 (9th Cir. 1987).  "An upward adjustment of the lodestar is

12  appropriate only in extraordinary cases, such as when the attorneys faced exceptional

13  risks of not prevailing or not recovering any fees."  Id. (citing Chalmers, 796 F.2d at

14  1212).

15    In this case, there are no exceptional circumstances that warrant an upward

16  adjustment of the lodestar.  Although Class Counsel undeniably faced risks, this case is

17  a garden variety wage and hour case that does not necessitate an increase to the

18  lodestar.

19    The Court further finds that an award of 25% of the common fund, or $100,000, is

20  appropriate in light of Class Counsel's final lodestar of $95,519.65.  Indeed, the lodestar,

21  as calculated by the Court, underscores that a 33.33% recovery (or $133,333.33) would

22  be a windfall to Class Counsel of nearly $40,000.  Accordingly, based on consideration

23  of the six factors set forth by the Ninth Circuit, and the lodestar crosscheck, the Court

24  finds that the benchmark award of 25% is appropriate.  The Court finds that 25%, rather

25  than 33%, is the reasonable result in this case.  However, the Court may revisit this

26  matter at the Final Fairness Hearing.

27  ///

28  ///

34

1

### F.     Plaintiff's Enhancement

2

3        "Named plaintiffs, as opposed to designated class members who are not named

4   plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977.  The

5   district court, however, must "evaluate their awards individually" to detect "excessive

6   payments to named class members" that may indicate "the agreement was reached

7   through fraud or collusion." Id. at 975.  To assess whether an incentive payment is

8   excessive, district courts balance "the number of named plaintiffs receiving incentive

9   payments, the proportion of the payments relative to the settlement amount, and the size

10  of each payment." Id.

11       Plaintiff requests an enhancement of $7,500.  Courts have generally found that

12  $7,500 incentive payments are reasonable.  See, e.g., Pelletz v. Weyerhaeuser Co.,

13  592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) (approving incentive awards of $7,500

14  each to the four class representatives of a class of between 110,000 and 140,000

15  members in an settlement for an unspecified amount and in which attorneys' fees were

16  capped at $1.75 million); Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau,

17  No. C 07-00362, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) (awarding incentive

18  payment of $7,500 to class representative of a class of 8,057 members in a settlement

19  of $1.5 million).  In previous cases, however, analogous incentive payments constituted

20  a significantly smaller portion of the overall settlement than Plaintiff's proposed $7,500

21  incentive payment, which constitutes 1.8% of the total settlement amount.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1   Jacobs, 2009 WL 3562871, at *5 (total incentive payment did not exceed .5% of the total

2   settlement); Morales v. Stevco, Inc., No. 1:09-cv-00704 AWI JLT, 2012 WL 1790371,

3   *19 (E.D. Cal. May 16, 2012) (total incentive payment of $7,500 did not exceed .81% of

4   total settlement); see also In re Mego Fin. Corp., 213 F.3d 454, 463 (9th Cir. 2000) (total

5   incentive payments of $5,000 to each of two class representatives did not exceed .56%

6   of total settlement); Wright, 259 F.R.D. at 477 (total incentive payment of $5,000 did not

7   exceed .2% of total settlement); but see Alvarado v. Nederend, No. 1:08–cv–01099

8   OWW DLB, 2011 WL 1883188, *11 (E.D. Cal. May 17, 2011) (incentive payment of

9   $7,500 to each plaintiff did not exceed 1.5%, and total incentive payment of $35,000 to

10  the five plaintiffs neared 7.5% of total settlement).

11       Here, Plaintiff's actions in bringing the action and participating in discovery and

12  mediation resulted in a settlement that, if approved, will provide monetary relief to a large

13  class of former and current employees of Defendant.  Plaintiff initially spoke with

14  Mr. Malk in July of 2011.  (ECF No. 25 at 4.)  Thereafter, Plaintiff assisted Mr. Malk and

15  Mr. Ackermann in preliminary research and investigation before the Complaint was filed.

16  (Id.)  This research included making phone calls to other managers and supervisors and

17  providing Class Counsel with contact information for potential witnesses.  (Id. at 5.)

18  Plaintiff then sent emails and participated in teleconferences over the course of several

19  months.  (Id. at 5-6.)  On May 23, 2012, Plaintiff was deposed in San Francisco,

20  California.  (Id. at 6.)  Plaintiff traveled to his deposition from his home in Middletown,

21  California.  (Id.)  In October 2012, Plaintiff prepared with his attorneys for the mediation

22  and participated in the full day mediation session on October 22, 2012.  (Id. at 7.)

23  Plaintiff again traveled from his home in Middletown, California, to the mediation session

24  in Oakland, California.  (Id.)  After the mediation session, Plaintiff participated in post-

25  mediation discussions with Class Counsel, including participating in a teleconference

26  with Mr. Ackermann.  Thus, it is clear that Plaintiff invested some time in this litigation.

27  ///

28  ///

However, if every member of the class opted into the settlement, each claimant would receive an average of only $65.79, while the named plaintiff would receive $7,500. In light of this drastic disparity, and the fact that there is no evidence that Plaintiff spent more time assisting counsel than occurs in the average case, the Court finds that an incentive payment of $7,500 is inappropriate.  See, e.g., Knight v. Red Door Salons, Inc., No. 08-01520, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (awarding $5,000 for named plaintiffs expending 40-50 hours each to help recover $500,000).  Also weighing in favor of this conclusion is the fact that the "overall recovery on behalf of the class is substantial, but by no means extraordinary." Jacobs, 2009 WL 3562871, at *5.  Instead, the Court awards Plaintiff an incentive fee of $2,500, which is approximately .62% of the total settlement.  While the Court may revisit this matter at the Final Fairness Hearing, at present this incentive fee appears fair and reasonable for purposes of preliminary approval.

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Preliminary Approval of Class Action Settlement is GRANTED.  Specifically, IT IS HEREBY ORDERED that:

1.      The Court certifies for settlement purposes only Plaintiff's alleged class of "all current and former Best Buy employees who held the position of Manager and/or Supervisor in a Best Buy or Best Buy Mobile retail store in California at any time from October 31, 2007, through the date of preliminary approval."

2.      Class Members will receive a settlement payment only if they submit a timely and proper Claim Form.  In accordance with the Settlement Agreement, a Claim Form must be submitted within sixty (60) days after mailing of the Class Notice by the Claims Administrator.

///

///

3.      Pursuant to the Settlement Agreement, the Court hereby appoints Simpluris, Inc., as Claims Administrator, pursuant to the terms set forth in the Settlement Agreement.

4.      The Court hereby appoints Plaintiff Jorge Monterrubio as Class Representative, and Craig J. Ackermann, of Ackermann & Tilajef, P.C., and Michael Malk, of the Malk Law Firm, as Class Counsel.

5.      Class Counsel is awarded 25% of the total settlement as attorneys' fees.

6.      Class Representative Jorge Monterrubio is awarded $2,500 in attorneys' fees.

7.      Within thirty (30) days of this Order, Defendant is directed to provide a Class Member List to the Claims Administrator, in accordance with the Settlement Agreement.

8.      The Claims Administrator is directed to mail the approved Class Notice and Claim Form by first-class mail to Class Members not later than twenty-one (21) days after receipt of the Class Member List, in accordance with the Settlement Agreement.

9.      A Final Fairness Hearing will be held on October 31, 2013, to determine whether the Settlement should be granted final approval as fair, reasonable and adequate as to the Class Members.  The Final Fairness Hearing to determine whether the Settlement Agreement should be granted final approval as fair, reasonable and adequate will be held not earlier than sixty days after the end of the claims period.  At the Final Fairness Hearing, the Court will hear any further evidence necessary to evaluate the settlement, and will consider Plaintiff's request for the Class Representative Service Enhancement Payment and Class Counsel's request for an award of Attorney's Fees and Costs.

Class Members and their counsel may support or oppose the Settlement and the motion for awards of the Class Representative Service Enhancement Payment and Attorney's Fees and Costs, if they so desire, in accordance with the procedures set forth in the Class Notice.

10.     As set forth in the Settlement, any Class Member may appear at the final approval hearing in person or by his or her own attorney, and show cause why the Court should not approve the Settlement, or object to the motion for awards of the Class Representative Service Enhancement Payment and Attorney's Fees and Costs.  For any objections to be considered at the hearing, the Class Member must file a written statement containing the name and address of the objecting Class Member and the basis for that person's objections, together with an notice of intent to appear, if appropriate, which must be postmarked no later than thirty (30) days from the date on which the Class Notices are sent out by the Claims Administrator.

11.     The Court reserves the right to continue the date of the final approval hearing without further notice to Class Members.  The Court also retains jurisdiction to consider all further applications arising out of or in connection with the Settlement.

12.     Class Counsel shall file a memorandum of points and authorities not later than twenty-one days before the Final Fairness Hearing.

IT IS SO ORDERED.

DATED:  May 13, 2013

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT