UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE MONTERRUBIO, individually and on behalf of other similarly situated, | No.  2:11-CV-03270-MCE-AC |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| BEST BUY STORES, L.P., a Virginia Limited Partnership, and DOES 1 through 100, | |
| Defendants. | |

Through this action, Plaintiff Jorge Monterrubio ("Plaintiff") alleges Defendant Best Buy Stores, L.P. ("Defendant"), failed to reimburse its supervisors and managers for the use of their personal vehicles for business.  In particular, Plaintiff alleges violations of California Labor Code section 2802 and California Business and Professions Code section 17200 on behalf of himself and a statewide class of similarly situated persons. On May 14, 2013, the Court preliminarily approved a Settlement Agreement reached by the parties.

///

///

///

1

Presently before the Court is Plaintiff's Motion for an Order Granting Final Approval of Class Action Settlement ("Motion for Final Approval").  Mot. Final Approval, Oct. 10, 2013, ECF No. 38.  Also before the Court is Plaintiff's Motion for Approval of Class Counsel's Fees and Costs ("Motion for Attorneys' Fees").  Mot. Attys' Fees, July 18, 2013, ECF No. 34.  On November 18, 2013, the Court held a hearing on the motions and ordered them submitted.  For the reasons set forth below, Plaintiff's Motion for Final Approval is GRANTED and Plaintiff's Motion for Attorneys' Fees is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

**A.    Class Action Allegations**

Plaintiff resides in Middletown, California and worked for Defendant from September 2, 2001, to July 23, 2011.  He worked as a Geek Squad Supervisor at Defendant's Vacaville, California, store from October 7, 2007, through February 23, 2008, and from February 24, 2008, through December 13, 2008, Plaintiff was a Best Buy Mobile Manager.  From December 14, 2008, through May 2, 2009, Plaintiff was a Computer Supervisor, and from May 3, 2009, through July 23, 2011, Plaintiff was a Portable Electronics Supervisor.  Plaintiff alleges that he and the putative class members were required to use their personal vehicles to transfer Defendant's supplies from one Best Buy location to another.  According to Plaintiff, he and putative class members were required to use their personal vehicles to perform inter-store inventory transfers at least once to twice per week and to travel to local businesses to procure necessary office supplies for Defendant's use.

///

///

///

1    Defendant failed to reimburse Plaintiff and the putative class members for both

2    unpaid fuel costs and for wear and tear on their vehicles, as well as all other fixed or

3    variable costs associated with operating their vehicles for business purposes.  Moreover,

4    Defendant failed to provide this reimbursement even though Defendant had notice that

5    Plaintiff and the putative class members were incurring these expenses.

6

7    **B.    Procedural History**

8

9    Plaintiff filed his original Class Action Complaint in the Superior Court of

10   California, Solano County, on behalf of himself and other similarly situated individuals.

11   On December 8, 2011, Defendant removed the case to federal court, asserting

12   jurisdiction under the Class Action Fairness Act.  Thereafter, Plaintiff and Defendant

13   served their initial disclosures, and Defendant took Plaintiff's deposition.

14   Following Plaintiff's deposition, the parties agreed to conduct informal discovery in

15   preparation for private mediation.  Between June and August 2012, Class Counsel

16   interviewed and obtained sworn declarations from seven Class Members who worked at

17   Defendant's stores in Vacaville, Sacramento, Citrus Heights and Fairfield, California.

18   The declarations revealed that these class members' experiences closely matched

19   Plaintiff's experiences at Defendant's Vacaville and Fairfield stores.

20   Defendant provided Plaintiff with its policies for reimbursing employees for

21   business expenses, including Defendant's written policy to exclude normal commuting

22   miles from calculating reimbursable mileage for business travel in personal vehicles.

23   Defendant also provided data of its inter-store transfers in California, which included,

24   among other things, hand carries between all California stores from July 2010 through

25   April 2012.  The data revealed that Class Members performed approximately 6,623

26   hand-carry transfers during that time period.

27   ///

28   ///

1    Defendant also prepared a maximum exposure analysis, which showed that, as of

2  August 2012, Defendant's maximum exposure, excluding interest, attorney's fees, and

3  potential penalties under the Private Attorneys General Act ("PAGA"), amounted to

4  approximately $695,000.  Plaintiff created his own damages model, estimating

5  Defendant's total maximum exposure at $1.3 million.

6    On October 22, 2012, the parties attended an all-day mediation at the offices of

7  Jeffrey A. Ross, Esq., in Oakland, California.  Attorneys Craig Ackermann and Michael

8  Malk ("Class Counsel"), settlement consultant Barry Goldstein, and Plaintiff attended on

9  behalf of Plaintiff and the proposed class.  Attorneys Rebecca Epstein and Stephen

10  Taeusch, along with a corporate representative of Defendant, attended on Defendant's

11  behalf.  At the mediation, the parties reached a settlement agreement ("Settlement

12  Agreement" or "Settlement"), which was fully executed on December 21, 2012.

13    On January 4, 2013, Plaintiff asked the Court to conditionally certify the

14  settlement class and to preliminarily approve the settlement.  Mot. Preliminary Approval,

15  Jan. 4, 2013, ECF No. 21.  The Court granted the motion and certified, for settlement

16  purposes only, a class of "all current and former Best Buy employees who held the

17  position of Manager and/or Supervisor in a Best Buy or Best Buy Mobile retail store in

18  California at any time from October 31, 2007, through the date of preliminary approval."

19  Order 37, May 14, 2013, ECF No. 32.  The Court appointed a Claims Administrator,

20  which was directed to mail the approved Class Notice and Claim Form to Class

21  Members.  Id. at 38.  Finally, the Court set a Final Fairness Hearing to determine

22  whether the Settlement should be granted final approval as a fair, reasonable, and

23  adequate settlement for the Class Members.  Id.

24  ///

25  ///

26  ///

27  ///

28  ///

4

Presently before the Court is Plaintiff's Motion for Final Approval and Motion for Attorneys' Fees, which incorporates a request for costs and approval of a class representative incentive award.  On November 18, 2013, the Court held a hearing on these motions and ordered the motions submitted.[1]

### C.    The Settlement

The parties agreed to settle for $400,000.  Their agreement provides a claims process and mandates that no settlement monies, including those settlement monies that go unclaimed, will revert to Defendant.  Plaintiff will discharge Defendant of all claims asserted in this action.  Under the Agreement, a Plaintiff's Incentive Award of up to $7,500, attorneys' fees of up to $133,333.33, Plaintiff's Counsel's actual costs of up to $15,000, and the Claims Administration Costs of up to $25,000 will be subtracted from the $400,000.  Thus, the Net Settlement Amount is the remainder, approximately $234,166.67, which will be available for distribution to Class Members who file timely and valid claims on a per work week basis.  The average estimated payment per Class Member is $65.79 ("Estimated Payment").

Unclaimed funds from the $400,000 settlement amount, if any, will be reallocated to Qualified Claimants.[2]  However, in no event will a Qualified Claimant's actual settlement payment be more than five times greater than the Estimated Payment.  The Estimated Payment for a Class Member is proportionate to the Class Member's duration of employment in a Covered Position during the Class Period.

///

///

---

[1] To the extent that the Court's written order differs from the Court's rulings on the bench, this Order controls.

[2] A "Qualified Claimant" is defined as a "Class Member who has timely submitted a completed Claim Form to the Claims Administrator, signed under penalty of perjury, and who has not timely submitted a valid Request for Exclusion from the Settlement to the Claims Administrator."  Order at 4.

1  Any amount in excess of five times the Estimated Payment will be donated to the

2  Volunteer Legal Services Program of the Bar Association of San Francisco and

3  submitted to the Court for approval.

4

5                                          **ANALYSIS**

6

7       **A.      Class Certification**

8

9            A court may certify a class if a plaintiff demonstrates that all of the prerequisites of

10  Federal Rule of Civil Procedure 23(a) have been met,[3] and that at least one of the

11  requirements of Rule 23(b) have been met.  Fed. R. Civ. P. 23; see also Valentino v.

12  Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  Before certifying a class, the

13  trial court must conduct a "rigorous analysis" to determine whether the party seeking

14  certification has met the prerequisites of Rule 23.  Id. at 1233.  Where the parties have

15  entered into a settlement agreement before class certification, district courts "must pay

16  'undiluted, even heightened, attention' to class certification requirements . . . ."  Hanlon v.

17  Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Amchem Prods., Inc. v.

18  Windsor, 521 U.S. 591, 620 (1997)).  While the trial court has broad discretion to certify

19  a class, its discretion must be exercised within the framework of Rule 23.  Zinser v.

20  Accufix Research Inst., Inc., 235 F.3d 1180, 1186 (9th Cir. 2001), amended, 273 F.3d

21  1266 (9th Cir. 2001).

22            Rule 23(a) states in relevant part that "[o]ne or more members of a class may sue

23  or be sued as representative parties on behalf of all."  As a threshold matter, Rule 23(a)

24  requires that to certify a class, the court must be satisfied that:

25  ///

26  ///

27  ───────────────────────────

28       [3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

                                               6

(1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are question of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement).

Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011) (quoting In re Itel Secs. Litig., 89 F.R.D. 104, 112 (N.D. Cal. 1981)); see also Hanlon, 150 F.3d at 1019 (listing four requirements).

Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b).

In the present case, the Court previously preliminarily certified the following class: "all current and former Best Buy employees who held the position of Manager and/or Supervisor in a Best Buy or Best Buy Mobile retail store in California at any time from October 31, 2007, through the date of preliminary approval."  At that time, the Court concluded that the proposed class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).  Order at 9.  The Court also found that the proposed class satisfied the predominance and superiority requirements of Rule 23(b)(3).  Id. at 10-12.

No party or class member has objected to certification of the settlement class, and there is nothing before the Court to suggest that these prior findings should not be affirmed.  The Court therefore affirms its prior certification of the Class for the purpose of settlement.

///

///

7

///

**B.    Settlement**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  "Approval under [Rule] 23(e) is a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).

"The 'universally applied standard' in determining whether a court should grant final approval to a class action settlement is whether the settlement is 'fundamentally fair, adequate, and reasonable.'" Id. (quoting 5 Moore Federal Practice § 23.85).  A district court "may consider some or all of the following factors" when assessing whether a class action settlement agreement is "fair, reasonable, and adequate":

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

Rodriguez v. W. Pub. Corp., 563 F.3d 948, 963 (9th Cir. 2009) (quoting Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003)), overruled on other grounds by Dukes v. Wal–Mart Stores, Inc., 603 F.3d 571, 617 (2010); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).  The Ninth Circuit has made clear that these factors are not an "exhaustive list of relevant considerations," and that "the relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case." Officers for Justice v. Civil Serv. Comm'n of City of S.F., 688 F.2d 615, 625 (9th Cir. 1982).

///

1    ///

2          Additionally, the Court must ensure that "the agreement is not the product of fraud

3    or overreaching by, or collusion between, the negotiating parties."  Id.  However, even in

4    class action contexts, "the trial court is entitled to rely upon the judgment of experienced

5    counsel for the parties.  Indeed, the trial judge, absent fraud, collusion, or the like, should

6    be hesitant to substitute its own judgment for that of counsel."  Elkins v. Equitable Life

7    Ins. Co. of Iowa, 89 F.R.D. 104, 1998 WL 133741, *28 (Jan. 22, 1981).

8

9                    **1.      Strength of the Case; Risk, Expense, Complexity, and Likely**
                    **Duration of Further Litigation; Risk of Maintaining Class Action**
10                   **Status Through Trial**

11

12         As set forth above, Rodriguez provides that, in determining whether the

13   settlement is "fair, reasonable, and adequate," the Court should "consider . . . the

14   strength of plaintiffs' case" as well as "the risk, expense, complexity, and likely duration

15   of further litigation[, and] the risk of maintaining class action status throughout the

16   trial . . . ."  563 F.3d at 963 (quoting Molksi, 318 F.3d at 953).  The Court must balance

17   these competing concerns along with "the benefits afforded to members of the Class,

18   and the immediacy and certainty of a substantial recovery."  Shames v. Hertz Corp., No.

19   07-CV-2174-MMA(WMC), 2012 WL 5392159, *5 (S.D. Cal. Nov. 5, 2012).  Stated

20   another way, "the Court shall consider the vagaries of litigation and compare the

21   significance of immediate recovery by way of the compromise to the mere possibility of

22   relief in the future, after protracted and expensive litigation."  Id. (quoting Nat'l Rural

23   Telecomms., 221 F.R.D. at 526).

24         Here, as before, the Court finds that Plaintiff and the Class would face substantial

25   risks if litigation continued.  For example, Defendant took the position that it has a written

26   expense policy that complies with the relevant law, and that the named Plaintiff, and

27   other Class Members, never submitted requests to Defendant for mileage

28   reimbursements associated with the mileage they incurred when they performed hand-

1   carry transfers.

2   Similarly, Defendant asserts that it has an "exhaustion defense," as Plaintiff did not

3   submit mileage reimbursement requests when he performed hand carries.  Additionally,

4   there are risks that the Class would not be able to maintain its certification, as Defendant

5   claimed that supervisors and managers were responsible for advising employees about

6   how to obtain reimbursement for business expenses, and thus Defendant may argue

7   that Plaintiff had interests adverse to the class.

8        There were also disputes between Plaintiff and Defendant about whether the

9   applicable legal standard for the section 2802 claim is "knew" or "should have known,"

10  which could substantially affect Plaintiff's ability to recover from Defendant.

11       Thus, while the parties conducted discovery and exchanged information through

12  formal and informal discovery—sufficient to learn the relevant and necessary facts to

13  assess the merits and value of the case—there is no guarantee that Plaintiff and the

14  Class would obtain a favorable, unanimous jury verdict.  In short, Plaintiff's case is not

15  ironclad, and this factor counts in favor of finding the settlement fair and reasonable.

16  These factors also got to the risk, and complexity, of further litigation.  Here, it is clear

17  there are risks in proceeding with litigation, despite the fact that the litigation is not

18  particularly complex.  The risk is heightened because Defendant adamantly maintains

19  that is not liable for the alleged wrongdoings and there are "unsettled legal issues" with

20  respect to the relevant statutes.

21       Moreover, it is clear that the litigation would continue on far longer, possibly for

22  years, if the case did not settle, as there have been no motions filed other than those

23  relevant to the Settlement Agreement, and no trial date is currently set.  Needless to say,

24  such protracted litigation would likely come at considerable expense to both parties.

25  Thus, these factors also weigh in favor of approving the Settlement.

26  ///

27  ///

28  ///

///

## 2.      The Settlement Amount

To determine "whether the Settlement Amount is fair, the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation." Shames, 2012 WL 5392159, at *6 (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000)).  "While settlement amounts that are close to the plaintiff's estimate of damages provide strong support for approval of the settlement, settlement offers that constitute only a fraction of the potential recovery do not preclude a court from finding that the settlement offer is fair." Id. (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459).

Here, Defendant estimated its maximum exposure at $695,000.  Plaintiff on the other hand, estimated Defendant's total maximum exposure at $1.3 million.  Thus, the settlement amount represents fifty-seven percent of Defendant's maximum exposure estimate, and thirty percent of Plaintiff's maximum exposure estimate.  Other courts have found that a settlement constituting as little as one-sixth of the potential recovery was fair and adequate.  See In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459; see also Williams v. Costco Wholesale Corp., 2010 WL 2721452 (S.D. Cal. July 7, 2010) (finding settlement amount constituting approximately 75.6% of plaintiff's claimed losses adequate); Glass v. UBS Fin. Serv., Inc., 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (finding settlement of wage and hour action for 25%-35% of claimed damages to be reasonable).  Accordingly, the Court finds that the settlement amount of $400,000 is fair, reasonable, and adequate, and weighs in favor of approving the Settlement.

## 3.      Extent of Discovery and Stage of the Proceedings

"In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a

11

1   necessary ticket to the bargaining table.'"

2   Shames, 2012 WL 5392159, at *6 (quoting Linney v. Cell. Ak. P'ship, 151 F.3d 1234,

3   1239 (9th Cir 1998).  As set forth in the Court's prior order, the parties did not fully

4   complete discovery prior to settlement negotiations, but rather engaged in a process of

5   informal discovery.  Moreover, the parties requested a bifurcated discovery process, in

6   which the first phase of discovery was limited to facts that are relevant to whether the

7   action should be certified as a class action.  Pre-Trial Scheduling Order 2, Mar. 27, 2012,

8   ECF No. 13.  However, approval of a class action settlement is proper as long as

9   discovery allowed the parties to form a clear view of the strengths and weaknesses of

10  their case.  In re Immune Response Secs. Litig., 497  F.  Supp. 2d 1166, 1174 (S.D. Cal.

11  2007).

12      This litigation is not remarkably complex, and thus it is reasonable that, through

13  informal discovery, the parties have gained a clear view of the strengths and

14  weaknesses of their cases, thus enabling them to engage in meaningful settlement

15  negotiations.  This factor too weighs in favor of finding the settlement is fair, reasonable,

16  and adequate.

17

18          **4.      Experience and Views of Counsel**

19

20      Class Counsel includes attorneys from two separate law firms, who individually

21  and as a group are experienced in litigating class actions and wage and hour cases.

22  Plaintiff's attorney Michael Malk has been appointed or recommended as class counsel

23  or co-counsel on sixteen different occasions.  As stated in the Court's prior order, the

24  Court is entirely satisfied that Class Counsel has adequately represented the Class.

25  Order at 9.  As such, their support of the settlement is accorded significant consideration

26  and weighs heavily in favor of finding the Settlement fair, adequate, and reasonable.

27  See Nat'l Rural Telecomms., 221 F.R.D. at 528 ("Great weight is accorded to the

28  recommendation of counsel, who are most closely acquainted with the facts of the

1  underlying litigation.

2  This is because parties represented by competent counsel are better positioned than

3  courts to produce a settlement that fairly reflects each party's expected outcome in the

4  litigation.")

5

6          **5.**      **Reaction of Class Members**

7

8        In the Ninth Circuit, the number of class members who object to a proposed

9  settlement is a factor the Court may consider in its settlement approval analysis.

10  <u>Rodriguez</u>, 563 F.3d at 963.  "The absence of a large number of objectors supports the

11  fairness, reasonableness, and adequacy of the settlement."  <u>Shames</u>, 2012 WL

12  5392159, at *8 (citing <u>In re Austrian & German Bank Holocaust litig.</u>, 80 F. Supp. 2d 164,

13  175 (S.D.N.Y. 2000); <u>Boyd v. Bechtel Corp.</u>, 485 F. Supp. 610, 624 (N.D. Cal. 1979)).

14        Here, no Class Members have objected.  Bui Decl. 3, Oct. 10, 2013, ECF No. 42.

15  This fact weighs in favor of finding the settlement fair, adequate, and reasonable.

16  In light of the factors discussed above, the Court finds the Proposed Settlement is fair,

17  reasonable, and adequate.  Accordingly, Plaintiff's Motion for Order Granting Final

18  Approval of Class Action Settlement is GRANTED.

19

20  **C.**    **Attorneys' Fees**

21

22        Where the payment of attorneys' fees is part of the negotiated settlement, the fee

23  settlement must be evaluated for fairness in the context of the overall settlement.

24  <u>Knisley v. Network Assocs.</u>, 312 F.3d 1123, 1126 (9th Cir. 2002).  Courts must ensure

25  that the attorneys' fees awarded in a class action settlement are reasonable, even if the

26  parties have already agreed on an amount.  <u>In re Bluetooth Headset Prods. Liability</u>

27  <u>Litig.</u>, 654 F.3d 935, 941 (9th Cir. 2011).  In the Ninth Circuit, "the district court has

28  discretion in common fund cases to choose either the percentage-of-the-fund or the

1    lodestar method."

2    Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing In re Wash. Pub.

3    Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295-96 (9th Cir. 1994)).

4        Under the percentage-of-recovery method, the prevailing attorneys are awarded a

5    percentage of the common fund recovered for the class.  Id.  In applying this method,

6    courts typically set a benchmark of 25% of the fund as a reasonable fee award, and

7    justify any increase or decrease from this amount based on circumstances in the record.

8    Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

9    Under the lodestar method, the prevailing attorneys are awarded an amount calculated

10   by multiplying the hours they reasonably expended on the litigation times their

11   reasonable hourly rates.  Staton, 327 F.3d at 965.

12       This amount may be increased or decreased by a multiplier that reflects any

13   factors not subsumed within the calculation, such as "the quality of representation, the

14   benefit obtained for the class, the complexity and novelty of the issues presented, and

15   the risk of nonpayment."  Bluetooth, 654 F.3d at 942.  Even if the court chooses to apply

16   the percentage-of-recovery method, calculation of the lodestar amount may be used as

17   a cross-check to assess the reasonableness of the percentage award.  Vizcaino, 290

18   F.3d at 1050–51.

19       Regardless of whether the court uses the percentage approach or the lodestar

20   method, the main inquiry is whether the end result is reasonable.  Powers v. Eichen, 229

21   F.3d 1249, 1258 (9th Cir. 2000).  The Ninth Circuit has identified a number of factors that

22   may be relevant in determining if the award is reasonable: (1) the results achieved;

23   (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent

24   nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in

25   similar cases.  Vizcaino, 290 F.3d at 1048–50.  Based on these factors, the percentage

26   amount can be adjusted upward or downward depending on the circumstances of the

27   case.  Paul, Johnson, Alston & Hunt v. Graulty ("Paul'), 886 F.2d 268, 271 (9th Cir.

28   1989).  Indeed, "in most common fund cases, the award exceeds th[e] benchmark."

1   In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).

2   Percentage awards of between twenty and thirty percent are common.  See In re

3   Activision Sec. Litig., 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of

4   recent reported cases discloses that nearly all common fund awards range around 30%

5   even after thorough application of either the lodestar or twelve-factor method.");

6   Vizcaino, 290 F.3d at 1047.  Nonetheless, an explanation is necessary when the district

7   court departs from the 25% recovery benchmark.  Powers, 229 F.3d at 1256-57.

8

9      **1. Percentage-of-Recovery Considerations**

10

11     The Court previously found that Class Counsel's requested attorneys' fees of

12   33.33% of the common fund lacked significant support.  Order at 32.  Specifically, the

13   Court considered the factors laid out by the Ninth Circuit in Vizcaino, 290 F.3d at 1048-

14   50, including the results achieved, the risks of litigation, the skill and quality of the work,

15   the contingent nature of the fee, and awards made in similar cases.  Order at 22-28.

16     In light of these factors, the Court observed that "the circumstances justifying a

17   fee award of 33% of the settlement fund are not readily apparent . . . ."  Id. at 27 (citing

18   Fischel v. Equitable Life Assur. Soc'y of the U.S., 307 F.3d 997, 1007 (9th Cir. 2002)

19   ("The fact that the case was settled early in the litigation supports the district court's

20   ruling [not to award class counsel's 25% fee award request because] the 25%

21   benchmark of the percentage-of-the-fun approach might very well have been a

22   'windfall.'"); Santos v. Camacho, No. 04-0006, 2008 WL 1699448, at *34 (D. Guam

23   April 10, 2008) (holding that "the minimal amount of discovery conducted" and the lack of

24   "any pre-trial or trial proceedings" made it "quite clear that the requested 10% of the

25   common fund would be unreasonable.)).

26     The Court now finds, in light of the lodestar cross-check, see infra, and in light of

27   Class Counsel's experience and the fact that Class Counsel has effectively and

28   efficiently litigated, and now settled, this case, that an award of 30% of the common fund

1   is appropriate.

2   Moreover, a comparison to awards typically made in common fund cases suggests that

3   an award of around 30% is appropriate here.  See In re Omnivision Techs., Inc., 559 F.

4   Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds th[e] benchmark.");

5   In re Activision Sec. Litig., 723 F. Supp. at 1377 ("This court's review of recent reported

6   cases discloses that nearly all common fund awards range around 30% even after

7   thorough application of either the lodestar or twelve-factor method.").  Taken together,

8   these factors justify an upward departure from the Ninth Circuit's 25% benchmark.  Thirty

9   percent of the common fund is therefore a reasonable and fair award of attorneys' fees

10  in this case.

11

12              **2.      Lodestar Cross-Check**

13

14          The lodestar cross-check requires the court to first determine whether the hourly

15  rates sought by counsel are reasonable.  "[T]he district court must determine a

16  reasonable hourly rate considering the experience, skill, and reputation of the attorney

17  requesting fees."  Chalmers v. City of L.A., 796 F.2d 1205, 1210 (9th Cir. 1986).

18          This determination "is not made by reference to rates actually charged by the

19  prevailing party."  Id.  Instead, the court should use the prevailing market rate in the

20  community for similar services of lawyers "of reasonably comparable skill, experience,

21  and reputation." Id. at 1210–11.  The "relevant legal community" in the lodestar

22  calculation is generally the forum in which the district court sits.  Accordingly, the rate to

23  be applied in the present case is the prevailing market rate for a wage and hour attorney

24  practicing in the Sacramento area.

25          The fee applicant bears the burden of demonstrating that "the requested rates are

26  in line with those prevailing in the community for similar services by lawyers of

27  reasonably comparable skill, experience and reputation."  Camacho v. Bridgeport Fin.,

28  Inc., 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted).

1   ///

2   "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the

3   community, and rate determinations in other cases, particularly those setting a rate for

4   the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate."  United

5   Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).  In

6   addition to considering affidavits and evidence submitted by the parties, the court may

7   also "rely on its own familiarity with the legal market."  Ingram v. Oroudjian, 647 F.3d

8   925, 928 (9th Cir. 2011).

9         Class Counsel provides a final lodestar amount of $168,199.00.  Mot. Atty's

10   Fees at 17.  This amount is based on a total of 403.03 hours expended on the litigation,

11   through July 18, 2013.  An additional 68 hours have been expended since the Court's

12   prior Order on Plaintiff's Motion for Preliminary Approval.  However, as before, this

13   lodestar rate is calculated at rates higher than the prevailing market rates in the

14   Sacramento Division of the Eastern District of California.

15         "Because the lodestar is being used here as a cross-check, the court may use a

16   'rough calculation of the lodestar.'  Bond, 2011 WL 2648879, at *12.  Although the Court

17   must certainly take into account the "rate determinations in other cases, particularly

18   those setting a rate for the plaintiff['s] attorney" as "evidence of the prevailing market

19   rate," United Steelworkers of Am., 896 F.2d at 407, the rate determinations by other

20   district judges, within and outside of the Eastern District, are not binding on the Court.

21   The Court must also consider the prevailing market rate in the community for similar

22   services of lawyers "of reasonably comparable skill, experience, and reputation."

23   Chalmers, 796 F.2d at 1210-11.  This determination "is not made by reference to rates

24   actually charged by the prevailing party."  Id.  Thus, as before, the fact that Ms.

25   Amsellem's "billing rate is $600 per hour" does not require the Court to award Ms.

26   Amsellem a fee of $600 per hour.

27   ///

28   ///

1   ///

2          As many cases in the Eastern District observe, "prevailing hourly rates in the

3   Eastern District of California are in the $400/hour range."  2011 WL 2648879, at *12; see

4   also Franco v. Ruiz Food Products, Inc., 1:10-CV-02354-SKO, 2012 WL 5941801, at *20

5   (E.D. Cal. Nov. 27, 2012); Gong-Chun v. Aetna Inc., 1:09-CV-01995-SKO, 2012 WL

6   2872788, at *21 (E.D. Cal. July 12, 2012); Garcia v. Gordon Trucking, Inc., 1:10-CV-

7   0324 AWI SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012).  For the reasons set forth

8   in the Court's prior order, the Court finds that the work and result in this case are not so

9   exceptional as to warrant a departure from the prevailing hourly rates in the $400/hour

10  range.

11         Accordingly, Mr. Ackermann, Mr. Malk, and Ms. Ansellem may be compensated

12  at an hourly rate of $400 per hour.  The Court further finds that a rate of $450 per hour

13  for Mr. Goldstein is appropriate, in light of his lengthy experience and expertise regarding

14  wage and hour litigation.  Next, "[j]udges in this district have repeatedly found that [a]

15  reasonable rate[] in this district [is] . . . $150 for associates."  Yeager v. Bowlin, No. 2:08–

16  cv-00102-WBS-JFM, 2010 WL 2303273, at *6 (E.D. Cal. June 7, 2010).

17         Counsel has provided Ms. Hernandez's curriculum vitae, which reveals that she

18  has been practicing law since 1997 and has been an associate of Ackermann & Tilajef,

19  P.C., since 2007.  In light of this experience and background, the Court awards Ms.

20  Hernandez a rate of $200 per hour.  As to law clerks, rates of $100-$110 per hour are "in

21  line with those rates prevailing in the community."  Ferrando v. Comm'r, No. 2:08–cv–

22  02470–GEB–CMK, 2013 WL 1087800, at *4 (E.D. Cal. Mar. 14, 2013).  A rate of $100

23  per hour is therefore awarded to Mr. Shapiro.  Finally, paralegals may be compensated

24  at an hourly rate between $75 and $100.  See, e.g., Passport Health, Inc. v. Travel Med,

25  Inc., 2:09-CV-01753-GEB, 2011 WL 6211874, at *2 (E.D. Cal. Dec. 14, 2011) (stating

26  that paralegal rates are generally $100 per hour or less in Sacramento and awarding an

27  hourly rate of $75 for paralegals); Murillo v. Pac. Gas & Elec. Co., No. CIV. 2:08–1974

28  WBS GGH, 2010 WL 2889728, at *10-11 (E.D. Cal. July 21, 2010) (finding rate of $95

per hour for paralegals and $300 for attorneys in wage and hour action appropriate).

The Court therefore awards a rate of $75 per hour to Ms. Salinas and $95 per hour to

Ms. Seiger.  Thus, the Court computes Class Counsel's lodestar as follows:

| Name | Hours | Claimed Hourly Rate | Awarded Hourly Rate | Awarded Lodestar |
|------|-------|---------------------|---------------------|------------------|
| Craig J. Ackermann, Esq. | 105.3 | $550 | $400 | $42,120 |
| Tatiana Hernandez, Esq. | 32.79 | $350 | $200 | $6,558 |
| Jala Amsellem, Esq. | 90.4 | $600 | $400 | $36,160 |
| Rosie Salinas, Legal Assistant | 36.2 | $150 | $75 | $2,715 |
| Michael Malk, Esq. | 31.08 | $500 | $400 | $12,432 |
| Linda Seiger, Paralegal | 76.54 | $200 | $95 | $7,271.30 |
| David Shapiro, Law Clerk | 16.62 | $150 | $100 | $1,662 |
| Barry Goldstein, Esq. | 14.1 | $785 | $450 | $6,345 |

The Court finds that the appropriate lodestar in this case, based on the awarded hourly

rates, is $115,263.30.

   After calculating the lodestar, the Court must decide whether to enhance or

reduce the award in the light of particular factors, including the novelty and difficulty of

the case, the skill displayed in presenting them, the extent the litigation precluded other

employment by the attorneys, and the contingent nature of the fee award.  Ketchum v.

Moses, 24 Cal. 4th 1122, 1132 (2001).

   However, "[t]here is no hard-and-fast rule limiting the factors that may justify an

exercise of judicial discretion to increase or decrease a lodestar calculation."  Thayer v.

Wells Fargo Bank, N.A., 92 Cal. App. 4th 819, 834 (2001).

1    ///

2         Moreover, "[t]here is a strong presumption that the lodestar figure represents a

3    reasonable fee." Goldkorn v. Cnty. of San Bernadino, EDCV 06-707-VAP OPX, 2012

4    WL 476279, at *10 (C.D. Cal. Feb. 13, 2012) (citing Jordan v. Multnomah Cnty., 815

5    F.2d 1258, 1262 (9th Cir. 1987). "An upward adjustment of the lodestar is appropriate

6    only in extraordinary cases, such as when the attorneys faced exceptional risks of not

7    prevailing or not recovering any fees." Id. (citing Chalmers, 796 F.2d at 1212).

8         In this case, there are not exceptional circumstances that warrant an upward

9    adjustment of the lodestar.  Although Class Counsel undeniably faced risks, this case is

10   a garden-variety wage and hour case that does not necessitate an increase to the

11   lodestar.  The Court further finds that an award of 30% of the common fund, or

12   $120,000, is appropriate in light of Class Counsel's final lodestar of $115,263.30.  Thus,

13   based on consideration of the six factors set forth by the Ninth Circuit, and the lodestar

14   cross-check, the Court finds that an award of 30%, rather than 33%, is the appropriate

15   and reasonable result in this case.

16

17        **3.    Costs**

18

19        "[A]n attorney who has created a common fund has a right to reimbursement even

20   if the litigation does not produce, or may never produce, an actual recovery." In re Media

21   Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing Mills v. Electric

22   Auto-Lite Co., 396 U.S. 375, 392 (1970).  "Reasonable costs and expenses incurred by

23   an attorney who creates or preserves a common fund are reimbursed proportionately by

24   those class members who benefit by the settlement." Id. (citing Herbert B. Newberg,

25   Attorney Fee Awards (1986) § 2.19: "Costs Reimbursement in Common Fund Fee

26   Determinations," at 69; Mills, 396 U.S. at 391-92).  "However, the costs and expenses

27   incurred by counsel are subject to a test of relevance and reasonableness in amount."

28   Id.; Hopson v. Hanesbrands Inc., CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3,

1 | 2009).

2 |       Here, the Settlement Agreement provides for the recovery of costs of up to

3 | $15,000.  Class Counsel seeks costs and expenses in the total amount of $11,037.96.

4 | Mot. Atty's Fees at 27.  These costs cover filing fees, mediation fees, copying, printing,

5 | WestLaw fees, and travel expenses.  See Ackerman Decl. 15, July 18, 2013, ECF No.

6 | 35; Malk Decl. 9, July 18, 2013, ECF No. 37.  The Court finds these costs are

7 | reasonable, and Class Counsel is therefore entitled to recover them.

8 |

9 |       **4.     Plaintiff's Enhancement**

10 |

11 |       "Named plaintiffs, as opposed to designated class members who are not named

12 | plaintiffs, are eligible for reasonable incentive payments."  Staton, 327 F.3d at 977.  The

13 | district court, however, must "evaluate their awards individually" to detect "excessive

14 | payments to named class members" that may indicate "the agreement was reached

15 | through fraud or collusion."  Id. at 975.  To assess whether an incentive payment is

16 | excessive, district courts balance "the number of named plaintiffs receiving incentive

17 | payments, the proportion of the payments relative to the settlement amount, and the size

18 | of each payment."  Id.

19 |       Plaintiff requests an enhancement of $7500.  Courts have generally found that

20 | $7500 incentive payments are reasonable.  See, e.g., Pelletz v. Weyerhaeuser Co., 592

21 | F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) (approving incentive awards of $7500 each

22 | to the four class representatives of a class of between 110,000 and 140,000 members in

23 | an settlement for an unspecified amount and in which attorneys' fees were capped at

24 | $1.75 million); Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau, No. C 07-00362, 2009

25 | WL 3562871 (N.D. Cal. Oct. 27, 2009) (awarding incentive payment of $7500 to class

26 | representative of a class of 8,057 members in a settlement of $1.5 million).

27 | ///

28 | ///

1   ///

2        In previous cases, however, analogous incentive payments constituted a

3   significantly smaller portion of the overall settlement than Plaintiff's proposed $7500

4   incentive payment, which constitutes 1.8% of the total settlement amount.  Jacobs, 2009

5   WL 3562871, at *5 (total incentive payment did not exceed .5% of the total settlement);

6   Morales v. Stevco, Inc., No. 1:09-cv-00704 AWI JLT, 2012 WL 1790371, *19 (E.D. Cal.

7   May 16, 2012) (total incentive payment of $7500 did not exceed .81% of total

8   settlement); see also In re Mego Fin. Corp., 213 F.3d 454, 463 (9th Cir. 2000) (total

9   incentive payments of $5000 to each of two class representatives did not exceed .56%

10   of total settlement); Wright, 259 F.R.D. at 477 (total incentive payment of $5000 did not

11   exceed .2% of total settlement); but see Alvarado v. Nederend, No. 1:08–cv–01099

12   OWW DLB, 2011 WL 1883188, *11 (E.D. Cal. May 17, 2011) (incentive payment of

13   $7500 to each plaintiff did not exceed 1.5%, and total incentive payment of $35,000 to

14   the five plaintiffs neared 7.5% of total settlement).

15        Plaintiff's actions in bringing the instant action and participating in discovery and

16   mediation resulted in a settlement that, if approved, will provide monetary relief to a large

17   class of former and current employees of Defendant.  Plaintiff initially spoke with Mr.

18   Malk in July of 2011.  (ECF No. 25 at 4.)  Thereafter, Plaintiff assisted Mr. Malk and Mr.

19   Ackermann in preliminary research and investigation, before the Complaint was filed.

20   (Id.)  This research included making phone calls to other managers and supervisors, and

21   providing Class Counsel with contact information for potential witnesses.  (Id. at 5.)

22   Plaintiff then sent emails and participated in teleconferences over the course of several

23   months.  (Id. at 5-6.)  On May 23, 2012, Plaintiff was deposed in San Francisco,

24   California.  (Id. at 6.)  Plaintiff traveled to his deposition from his home in Middletown,

25   California.  (Id.)  In October 2012, Plaintiff prepared with his attorneys for the mediation,

26   and participated in the full day mediation session on October 22, 2012.  (Id. at 7.)

27   Plaintiff again traveled from his home in Middletown, California, to the mediation session

28   in Oakland, California.  (Id.)

///

After the mediation session, Plaintiff participated in post-mediation discussions with Class Counsel, including participating in a teleconference with Mr. Ackermann. Thus, it is clear that Plaintiff invested some time in this litigation.  However, a total of 567 valid claims were received from the Class Members, representing 14.75% of the Settlement Class.  Bui Decl. at 3.  The average recovery under the settlement is approximately $453.35, and the highest recovery is approximately $728.32.  Id.  The disparity between the approximate recovery of $450 per class member and the proposed $7500 enhancement to Plaintiff is considerable, particularly in light of the fact that there is no evidence that Plaintiff spent more time assisting counsel than occurs in the average case.  Thus, the Court finds that an incentive payment of $7500 is not warranted.  See, e.g., Knight v. Red Door Salons, Inc., No. 08-01520, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (awarding $5,000 for named plaintiffs expending 40-50 hours each to help recover $500,000).  Also weighing in favor of this conclusion is the fact that the "overall recovery on behalf of the class is substantial, but by no means extraordinary." Jacobs, 2009 WL 3562871, at *5.  Instead, the Court awards Plaintiff an incentive fee of $2500, which is approximately .62% of the total settlement.

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED THAT Plaintiff's Motion for Order Granting Final Approval of Class Action Settlement (ECF No. 38) is GRANTED, and Plaintiff's Motion for Approval of Class Counsel's Fees and Costs (ECF No. 34) is GRANTED IN PART and DENIED IN PART.

Specifically, the Court orders that:

1.      The Court certifies for settlement purposes only a class consisting of all persons who were employed by Best Buy Stores, L.P. in the State of California from October 31, 2007, through May 13, 2013, in a Covered Position.  This class satisfies the

1  applicable criteria for class certification under Rule 23(a) and Rule 23(b)(3);

2      2.      Payment to the Settlement Administrator shall be made from the settlement

3  fund for its fees and expenses in accordance with the Settlement;

4      3.      The Settlement Administrator shall distribute settlement benefits to

5  claimants from the settlement funds in accordance with the Settlement;

6      4.      Craig Ackerman, Esq., and Michael Malk, Esq., are appointed as Class

7  Counsel;

8      5.      Class Counsel's request that the Court approve an award of 33.33% of the

9  total settlement is DENIED; Class Counsel is awarded 30% of the total settlement;

10      6.      Class Counsel is awarded their costs of $11,037.96 in full, to be paid from

11  the settlement funds;

12      7.      Plaintiff Jorge Monterrubio is appointed Class Representative;

13      8.      The Class Representative is awarded $2500 as an incentive payment, to

14  be paid from the settlement funds;

15      9.      Plaintiff's claims against Defendant are DISMISSED WITH PREJUDICE.

16      10.      The Court reserves continuing jurisdiction over the parties for the purposes

17  of implementing, enforcing, and/or administering the Settlement or enforcing the terms of

18  the judgment;

19      11.      Judgment is entered for Defendant; and

20      12.      The Clerk of the Court is directed to close this case.

21      IT IS SO ORDERED.

22  Dated:  November 20, 2013

23

24

25  _____
    MORRISON C. ENGLAND, JR., CHIEF JUDGE

26  UNITED STATES DISTRICT COURT

27

28

24